## WILLIAM NELSON GOODNOW

*v.*

## AMERICAN WRITING PAPER COMPANY.

[Submitted April 15th, 1907.    Decided April 17th, 1907.]

1. The owners of a number of paper mills combined and sold all of their properties to a newly-organized company, taking in exchange therefor, besides certain bonds, all of the preferred and common stock of the new company at an admitted overvaluation. The new organization was prosperous, had no debts, and earned annually large sums of money in excess of the amounts advanced to produce and sell its output. It de-

clared a dividend on the preferred stock, payable out of such annual earnings, and some of its stockholders sought to enjoin the payment of the dividends, upon the ground that there could be no surplus or net profits until the amount of the overvaluation had been earned and the impairment of the capital stock resulting from such overvaluation extinguished.—*Held*, that as between the stockholders, no fraud being charged, the agreement to issue the stock as full paid for property purchased was binding upon the company and its shareholders, and that the stock so issued is not subject to further call, either directly or indirectly, by suppression of dividends declarable from annual net profits, and that if all of the assets for which the stock was issued still remain in the possession of the company, or, if exhausted, replaced, in kind or with money, a dividend ascertained by reserving for capital the actual cost of the assets for which the stock was issued, they being still in possession, is not a dividing of the capital of the corporation.

2. A contract between the company and its stockholders that the stock issued to them as full paid, and not subject to further call, is, in the absence of fraud affecting other shareholders, binding upon the company and its stockholders, although subject to attack by creditors.

On bill for injunction. On demurrer.

*Mr. William H. Corbin,* for the complainant.

*Mr. Richard V. Lindabury,* for the defendant.

BERGEN, V. C.

The complainant seeks to enjoin the payment of a dividend on stock issued for property purchased upon the ground that the property being overvalued there can be no net profits or surplus from which dividends can be paid, unless the impairment of the capital, caused by the overvaluation, has been supplied, and until that is done the payment of dividends from "the surplus or from the net profits arising from its business," as provided in section 30 of our Corporation act as amended (*P. L. 1904 p. 275*), is a division, withdrawal or payment to stockholders by the corporation of a part of its capital stock.

The bill charges that the owners of certain paper mills, twenty-eight in number, sold to the corporation their respective properties, and took in payment bonds of the defendant company for $17,000,000, preferred stock for $12,500,000 and common stock for $11,500,000, being all of the preferred and common stock

issued by the company. The bill does not disclose in what manner the securities were divided among the respective vendors, but it is fair to assume from the manner of sale, and the manifest object of the parties, that the prices for the respective properties were agreed upon by all of the vendors, and distribution made accordingly, for the bill charges no fraud, concealment or misrepresentation by any of the parties to the transaction. It admits that the company has no debts; that all of its current obligations incurred in the management of its business are met at maturity; that the affairs of the defendant corporation are well managed; that it is in receipt of large profits annually over and above the advancements made for producing its products and conducting the business; that the net earnings for eighteen months prior to the 1st of July, 1906, exceeds $400,000, out of which it is proposed to distribute as dividends on the preferred stock $125,000, but charges that the amount paid for good will, patents and trade marks exceeds by $11,000,000 their value, which it is insisted shall be made up from earnings before any dividend can be paid, although all of the parties to the original transaction knew that the stock was issued to each shareholder as full paid for property purchased. The correctness of the complainant's contention is challenged by a demurrer, which confesses the truth of the allegation that the stock was issued for property at an overvaluation, and that the company did not receive for its stock money, or money's worth, in other words, the stock was "watered" to the extent of $11,000,000.

As the bill admits that there are no unsecured creditors, their rights are eliminated from present consideration, and the effect upon creditors of overvaluation of property purchased will not be considered, the only question intended to be determined is, whether, under the conditions set up in the bill of complaint, the payment of the proposed dividend out of the admitted net earnings arising from the conduct of the business is, as between stockholders, a division of any part of the "capital stock paid in," it being admitted that the corporation still owns the identical property taken for the stock, there having been no disposition of the specific property except where the value has been restored from the earnings.

The defendant insists a contract was entered into between the owners of the property and the company, under which the stock was issued as full paid in consideration of the property, with full knowledge by each of the parties of the values agreed upon as a support to the stock. I have no doubt that such a contract is binding upon the parties until set aside, because of fraud in its inception, or for some other legal reason. It does not distinctly appear whether or not the complainant was one of the original parties to the contract, but he charges no fraud or misrepresentation, as an inducement to purchase, on the part of his transferor, nor does he assert that he did not know the facts he now sets up when he became the owner of the stock.

The bill charges that the stock was all issued for property purchased, but not that the complainant acquired his stock by purchase, or otherwise than on account of property sold the corporation, and the presumption is that he received his stock with other shareholders in payment for the very property which he now claims was overvalued. He participated in the transaction, reaped its benefits, and is not in a position to claim that the good will bought, to his knowledge, with the stock of which he holds a part was overvalued. *Washburn* v. *National Paper Co., 81 Fed. Rep. 17, 21.*

That a contract between the company and its stockholder that the stock issued to him is full paid and not subject to further call, is, in the absence of fraud affecting other shareholders, binding upon the company and its stockholders, was declared by Chancellor McGill, in *Hebberd* v. *Southwestern Land and Cattle Co., 55 N. J. Eq. (10 Dick.) 18, 31,* where a stock bonus was given to purchasers of bonds of the company, the learned chancellor holding "such a contract is binding upon the company and its shareholders, but as the capital stock constitutes a trust fund for the payment of debts, it cannot be given away from the demands of creditors."

In *10 Cyc. 467* the rule is stated to be that a contract between the company and the shareholder, that his stock shall be issued in payment of property at an overvaluation is valid, though not binding on creditors, a conclusion which is supported by *Scovill* v. *Thayer, 105 U. S. 143.*

In *Krohn* v. *Williamson, 62 Fed. Rep. 869, 875,* there was an agreement that the completion of a bridge, the acquisition of a right of way, and the possession and enjoyment of certain franchises and privileges should be considered a full payment of $1,500,000 of the capital stock justifying its issue as full-paid stock. In upholding this contract Judge Taft said: "Such an agreement as between the company and its stockholders was entirely valid, however subject to attack by creditors it might be."

The rule seems to be established that between stockholders one cannot be legally called upon to make good any shortage in value between assets and the nominal par value of the stock, when his stock is issued under a contract with the company as full paid, whether as a bonus or for property at an overvaluation, when the issue is consented to by all the stockholders. It is a bargain between the contracting parties, which, in the absence of fraud, they cannot abrogate. They may let in one to participate in dividends, and thus reduce what they would have on that account, and decrease their share of the assets on final distribution, but they are dealing with their own property, and so long as they do not divide any part of the paid-in capital, they may contract to apportion dividends, properly payable, and also the assets, among as many as they choose, subject to the rights of creditors. The policy of our act is to preserve intact for all stockholders the actual capital assets, that a stockholder may not unknowingly exhaust his principal fund, but if with knowledge the stockholders of the company contract, even for an insufficient consideration as against creditors, that another may have an interest in its property, it is bound by its contract until it is in some lawful way set aside, and if, when they so contract they are bound, and cannot call upon a stockholder to make good his stock issued full paid in payment for property overvalued, it cannot be that it can withhold his dividend or share of the net profits of the business for such purpose, and thus accomplish by indirection what cannot be done by a direct proceeding.

Stockholders may agree as to the amount of capital to be paid in, and between them this agreement would be binding, and a further call, except in the event of insolvency, and the need of unpaid subscriptions to pay debts, could not be enforced, nor

would the company be prohibited from paying dividends out of net earnings until a sinking fund had been created sufficient to supply the unpaid subscriptions. The unpaid subscriptions, under such an agreement, would not represent a debt due the corporation that could be enforced, except in aid of creditors.

A number of English cases were cited on the argument, and while none of them related to the issue of stock for property at an overvaluation, they uniformly hold that where the tangible assets with which a corporation starts business, and for which its stock was issued remain, and are in the condition they were when taken over for stock issued, neither depreciation in value nor a waste caused by mining and selling the product is a reason for holding that dividends declared out of the profits of the business, arising from the sale of a product which will ultimately exhaust the capital asset, is a distribution of the capital. *Lee* v. *Neuchatel Asphalt Co., L. R. 41 Ch. Div. 1 (1889)*.

After a careful consideration of the questions involved, I am of opinion that as between these stockholders, no actual fraud being charged, the agreement to issue the stock as full paid for property purchased, the agreement having been carried out, is binding upon the company and its shareholders, and that the stock so issued is not subject to further call, either directly or indirectly, by suppression of dividends declarable from annual net profits, and that if all of the assets for which the stock was issued still remain in the possession of the company, or such of them as may have been exhausted replaced, either in kind or with money, to the extent of their real value, a dividend ascertained by reserving for capital the actual cost of the assets for which the stock was issued, they being still in possession, is not a dividing of the capital of the corporation, forbidden by our act.

As was said by Judge Showalter, in *Northern Trust Co.* v. *Columbia Straw Paper Co., 75 Fed. Rep. 936, 937:* "Whatever may have been in fact the value of the property turned over to the company for its stock, the company agreed to take it for the stock. The persons interested were the stockholders, and there was no dissent on the part of any person concerned from what was then done. Neither any person then holding stock, nor any person who afterwards became a stockholder by assignment from

one who then held stock, can now make complaint, on behalf of the corporation, as against the fairness of that transaction. This I take to be the settled law on that subject." This case was affirmed (C. C. A.) *80 Fed. Rep. 450.*

I will advise that the demurrer be sustained.