William Nelson Goodnow, appellant,

*v.*

American Writing Paper Company, respondent.

[Argued January 8th, 1908. Decided June 15th, 1908.]

Under section 30 of the act concerning corporations as amended in 1904 (*P. L. 1904 p. 275*), a dividend may be declared where the company has profits over and above the actual assets with which it began business, although the total assets may not exceed the debts and the nominal share capital.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bergen, whose opinion is reported in *72 N. J. Eq.* (*2 Buch.*) *645*.

*Mr. William H. Corbin,* for the appellant.

*Mr. Richard V. Lindabury,* for the respondent.

The opinion of the court was delivered by

SWAYZE, J.

The appellant filed his bill to have a resolution for the payment of a dividend upon the preferred stock of the defendant declared unlawful, null and void, and to restrain payment thereof. The bill charges that the capital stock of the company was for the most part issued for property purchased, which included trade-marks and good will taken at a grossly excessive valuation, and that whatever the value of the property given in exchange for the stock may have been at the time of purchase, it now falls short of the aggregate of the debts and the par value of the stock; that the operations of the company have been successful, and to some extent profitable, a considerable sum of money having been earned in excess of the interest upon the mortgage, and of the $100,000 required annually to be set aside as a sinking fund for the mortgage bonds, and of the cost of operating the company and keeping up its manufacturing plant; that the net annual gains as reported by the directors to. the stockholders prior to 1906 were used in part to purchase the company's own bonds for its treasury and for the sinking fund, and in part were set aside for working capital; and that on. July 1st, 1906, the balance sheet of the company showed accumulated profits to an amount several times the amount required to pay the proposed dividend; that the dividend was authorized by resolution of October 2d, 1906 (1905 in the printed case seems to be a clerical error), which directed the treasurer. to pay the dividend out of net profits on April 1st, 1907. The gravamen of the bill is that the payment of this dividend would constitute a division and withdrawal and payment to. the holders of preferred shares of a part of the capital stock of the company, and would constitute an unlawful reduction of the capital stock in violation. of the Corporation act.

To this bill the defendant demurred, and the court of chancery allowed the demurrer.

We think it unnecessary to discuss the question dealt with by the learned vice-chancellor. as to the right of the stockholders to. raise this question, or the question so thoroughly discussed at the

bar as to the meaning of net profits under our Corporation act as it stood prior to the enactment of chapter 143 of the laws of 1904. The question seems to us to involve only the construction of that act, and to turn upon the change introduced thereby. Cases cited from other jurisdictions are therefore of little assistance.

The material language in the act of 1896 (*P. L. 1896 p. 286*) is as follows:

"No corporation shall make dividends, except from the surplus or net profits arising from its business, nor divide, withdraw, or in any way pay to the stockholders, or any of them, any part of its capital stock, or reduce its capital stock, except according to this act."

In the act of 1904 this section is changed so as to read as follows:

"The directors of a corporation shall not make dividends except from its surplus, or from the net profits arising from the business of such corporation, nor shall it divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of such corporation, or reduce its capital stock except as authorized by law."

Under the act of 1896 there was room to contend that the words "net profits" were intended to be synonymous with the word "surplus;" the language used was "from the surplus or net profits." Under the act of 1904, this contention is no longer possible; the language used is "from its surplus, or from the net profits." The evident intent of the change is to point out two funds from which dividends may be made.

Although the change in language indicates that the legislature made a distinction between surplus and net profits, it does not necessarily follow that net profits mean the difference between gross earnings and what may be called operating expenses. Such profits may be called annual profits, and it may be that by net profits the legislature meant the net profits upon the whole of the company's business from its organization. If either of these meanings is adopted, the declaration of the present dividend is justified. There was an excess of gross earnings over the operating expenses of the current year, and the value of the present

assets exceeded the value of the actual assets with which the company began business. The complainant contends, however, that the term "net profits" is used in neither of these senses, but in the sense of an excess of the value of the present assets over the par value of the capital stock issued and outstanding; and the claim is that since that stock was issued for property at a gross overvaluation, there can be no dividend until the difference between the actual value of the property and the value at which it was taken over is made up. The argument is that the intent of section 30 is to prevent the capital stock being distributed in the form of dividends, and the words "capital stock" are supposed to be used in that section as synonymous with "share capital."

The ambiguity in the term "capital stock" was noticed by this court in *Wetherbee* v. *Baker, 35 N. J. Eq. (8 Stew.) 501.* It may mean either the capital subscribed (the share capital) or the capital paid in, the actual assets with which the company does business. It seems to be used in both senses in this very section. When the legislature forbids the dividing, withdrawing or paying to the stockholders any part of the capital stock it means the capital actually invested; when it forbids the reduction of capital stock it means the share capital subscribed, or the authorized capital.

We are led to the conclusion that the words "capital stock" in the first instance mean capital actually invested, by the fact that it is only actual assets that can be divided, withdrawn, or paid over. These words are not apt words to apply to nominal or share capital, which may be reduced, but can hardly be withdrawn, divided, or paid over. This capital actually invested does not include net profits arising from the business of the company, for the reasons that the language of the section itself makes a distinction between the declaration of dividends and of profits and the withdrawing of capital; that another method of securing payment of the par value of the stock is provided in other sections of the act; that the policy to be served by the prohibition of section 30 is to prevent the frittering away of the actual assets with which the company is to do business, not the

nominal assets which it has never received and for which it still has a claim against the subscribers for unpaid stock. The section distinguishes between surplus and net profits; but if the complainant is correct in his contention that net profits mean only the excess above the share capital, we see no distinction in fact, but only in bookkeeping entries.

It may not infrequently happen that stock is issued on which avowedly only a partial payment is made of the amount subscribed, which is therefore subject to further calls. We cannot think that in such a case, where the company prospers, there are no net profits available for dividends until the earnings accumulate to an amount equal to the par value of the shares. The complainant's brief concedes this, and the concession seems quite fatal to his argument.

The language of section 47 supports this view. It requires the directors, after reserving over and above its capital stock paid in such sum as shall have been fixed as a working capital, to declare a dividend of the whole accumulated profits. Here the profits are clearly to be ascertained by reference to the capital stock paid in, and not to the nominal share capital. It would be quite inconsistent to require by section 47 a dividend out of profits to be ascertained with reference to capital stock paid in, and to forbid by section 30 a dividend, unless there were net profits over and above the amount of the nominal share capital.

The complainant argued that the preferred stock issued by the company was not authorized because it exceeded two-thirds of the capital stock paid for in cash or property. It is quite enough to say that the complainant filed this bill as a holder of preferred as well as common stock, and does not pray for a decree adjudging the preferred stock invalid. The prayer is only that the resolution for a dividend may be decreed to be unlawful, null and void, and for an injunction. There is not even the usual prayer for general relief. It is therefore unnecessary to consider the question whether the issue of the preferred stock is not within the rule established in *Hackensack Water Co.* v. *DeKay, 36 N. J. Eq. (9 Stew.) 548.*

The decree is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—15.

*For reversal*—None.