### WILLIAM R. PETERS,

*vs.*

UNITED STATES MORTGAGE COMPANY, a corporation of the State of Delaware, HARRY W. DUBISKE, H. W. DUBISKE & COMPANY, a corporation of the State of Delaware, WALTER LUTRINGHAUS, CHARLES D. HOWE, OTTO E. FREUND, H. T. SNELL, R. C. SMITH, A. O. EBERHART and H. J. FRANK.

*New Castle, July* 20, 1921.

A corporation in the sale and issuance of its stock assumes a contractual relation to the stockholder; and, unless there be some provision in either the law or the corporate certificate reserving the power so to do, without the shareholder's consent, there can be no alteration in the terms of the contract under which the shareholder as such possesses his rights. But if the right to change or alter the contract is reserved in a proper way, no shareholder can complain of a proposed change.

There is impliedly written into every corporate charter in Delaware as a constituent part thereof every pertinent provision of the Delaware Constitution and statutes, including *General Corporation Law*, § 26, as amended by 29 *Del. Laws, c.* 113, reserving right to amend the certificate of incorporation to alter the rights of preferred stockholders.

*General Corporation Law*, § 26, as amended by 29 *Del. Laws, c.* 113, authorizes a corporation incorporated under the law to amend its articles of incorporation so as to alter the rights of stockholders, particularly preferred stockholders in respect of their preference rights.

Amendment of articles of incorporation of a corporation chartered under the *General Corporation Law*, affecting the preference rights of preferred stock, etc., *held* not violative of *Section 4a* of the law as added by 29 *Del. Laws, c.* 113, as giving the no par value common stock of the company a preference.

Under the Constitution and laws of Delaware it is permissible for a corporation to issue its capital stock in exchange for property less in value than the par of the stock, but an agreement that such stock so issued shall be fully paid and non-assessable is forbidden as against the company or its creditors.

*General Corporation Law*, § 35, as amended by 29 *Del. Laws, c.* 113, relative to dividends, how they are to be declared and paid, etc., is not meant to serve the purpose of defining the method whereby the existence or non-existence of a corporate surplus or net profits is to be ascertained, and, under *Section 34*, though a company has issued and outstanding about $3,000,000, par value of its stock, preferred and common, where the actual value realized

from the sale of such stock was only about $1,700,000, such sum may be set down as the capital of the company, and any surplus above it may be utilized for the payment of dividends.

INJUNCTION BILL. The complainant, an owner of shares of the capital stock of the defendant, United States Mortgage Company, by his bill seeks relief against that company, its officers and directors, who are made parties defendant, Harry W. Dubiske, who it is alleged owns a controlling interest in the company, and H. W. Dubiske and Company, a corporation of this state, engaged in business in Chicago, Illinois, as agent, or broker, "for the sale of stock of corporations on commission."

Among the matters complained of is a call for a special meeting of stockholders on July 21, 1921, for the purpose of considering a proposed amendment to the charter of the United States Mortgage Company, which it is alleged will seriously affect preferred stockholders, and the payment of a dividend declared June 20, 1921, of three and one-half per cent. on the preferred and common stock, alleged to have been unlawfully declared. As to these two matters temporary relief is sought, and upon presentation of the bill of complaint the Chancellor ordered a rule requiring the defendants to show cause why a preliminary injunction should not be issued restraining the submission to the stockholders' meeting of the proposed amendment to the charter, and restraining the payment of the dividend.

The rule was heard on bill and affidavits filed on behalf of the parties. The facts essential to the decision of the questions raised at the argument are sufficiently stated in the opinion of the Chancellor.

*Daniel O. Hastings*, for the complainant.

*Herbert H. Ward* and *Robert H. Richards*, for the defendants.

THE ,CHANCELLOR. The bill seeks inter alia to enjoin the defendants (1) from submitting to the stockholders of United States Mortgage Company for their approval a certain proposed amendment to the certificate of incorporation of said company; and (2) from paying a dividend on the preferred and common stock of said company, declared on June 20, last, but not yet paid.

1. The certificate of incorporation, in the fourth paragraph

thereof, defines the authorized capital to be five million dollars, divided into fifty thousand shares of the par value of one hundred dollars each, of which two million dollars shall be common stock and three million dollars shall be preferred stock. The preferred stock is entitled to receive dividends at the rate of seven per cent. per annum, and these dividends are made cumulative. After setting apart all cumulative dividends on the preferred stock, the common stock may receive from the surplus or net profits dividends at the rate of seven per cent. yearly. After these dividends have been declared and become payable, the paragraph provides that the remaining surplus, or net profits, is to be divided in certain designated proportions between a surplus account, and the preferred and common stockholders.

The directors have called a special meeting of stockholders to be held on the twenty-first day of July, 1921, to-morrow, at which they purpose to submit for consideration a proposed amendment to the certificate of incorporation, which amendment would strike out the fourth paragraph, above described, and insert in lieu thereof a new fourth paragraph. The proposed new paragraph in substance alters the original in the following particulars: The preferred stock, though the same in number of shares, par value and amount as before, and though it retains its right to the seven per cent. cumulative dividend, is deprived of any opportunity to share in the apportionment of surplus and net profits remaining after payment of preferred dividends and seven per cent. on the common stock as before.

The amendment further alters the paragraph by providing for twenty thousand shares of common stock without nominal, or par value, in lieu of the common stock above described. The amendment also provides, that after setting apart all accumulated dividends on the preferred stock and seven dollars per share per annum on the no par value common stock, "further distribution of surplus or net profits by way of dividends shall, if, as and when made, be payable in such amounts as the board of directors may from time to time determine."

That the proposed amendment does materially alter the terms of the contract now existing between the corporation and its shareholders, particularly its preferred shareholders, is apparent.

On the theory that such alteration of the terms of the contract by which the stock is held is not permissible because destructive of the contractual rights of the shareholder, the complainant, who alleges that he is the owner of both preferred and common stock, asks this court to.enjoin the defendants from submitting the proposed amendment to the stockholders at the special meeting.

A corporation, in the sale and issuance of its stock, assumes a contractual relation to the shareholder. For the terms of the contract, the rights of the stockholder and the obligations of the corporation, reference is to be made to the appropriate provisions of the certificate of incorporation and the law of the sovereign conferring the corporate franchise. Unless there be some provision in either the law or the corporate certificate reserving the power to do so, there can be no alteration in the terms of the contract under which the shareholder, as such, possesses his rights, without his consent. If, however, the right to change or alter the stockholder's contract be reserved in a proper way, then no shareholder can complain against a proposed change therein, for the very plain reason that one of the terms by which he holds his contract is that the same may be altered.

The case of *Pronick v. Spirits Distributing Co.,* 58 *N. J. Eq.* 97, 42 *Atl.* 586, cited for the complainant, recognizes this principle. In that case the following language is found:

"When this contract [evidenced by the certificate of stock] is so issued under the statute, and contains the provisions as to rate of dividend, which the statute expressly authorizes the holder to receive and obliges the company to pay, a direct obligation or contract between the stockholder and the company as to the rate of dividend is created, which cannot be altered without his consent, unless the right to do so has been expressly reserved."

The only question, therefore, in this case is whether there is power reserved in the defendant company to make the change in question. On this, there can be no doubt. Indeed, the solicitor for the complainant does not seriously contest the point.

There is impliedly written into every corporate charter in this state, as a constituent part thereof, every pertinent provision of our Constitution and statutes. The corporation in this case was created under the *General Corporation Law* (*Rev. Code* 1915, §§ 1915-2101*g*, as amended by 29 *Del. Laws, c.* 113). That

law clearly reserves to this corporation the right to amend its certificate in the manner proposed. *Section* 26 of the act provides, among other things, as follows:

"* * * Any corporation created under the provisions of this chapter, may, from time to time, when and as desired, amend its charter of incorporation, either by addition to its corporate powers and purposes, or diminution thereof; * * * or by making any other change or alteration in its charter of incorporation that may be desired; provided that such amendment, change or alteration shall contain only such provisions as it would be lawful and proper to insert in an original certificate of incorporation made at the time of making such amendment."

This very broad power of amendment would seem to permit the amendment in question. But if the section stopped with this provision, and contained nothing further, it might still be open to question whether such permissive power of amendment could be so exercised as to deprive a stockholder of his rights under the terms of the contract by which he holds his stock. The section, however, removes this question from the realm of doubt by expressly providing in its later clauses, as follows:

"* * *Provided, however, that if any such proposed amendment would alter or change the preferences given to any one or more classes of preferred stock, authorized by the certificate of incorporation, or would increase or decrease the amount of the authorized stock of such class or classes of preferred stock, or would increase or decrease the par value thereof, then the holders of the stock of each class of preferred stock so affected by the amendment shall be entitled to vote as a class upon such amendment, whether by the terms of the certificate of incorporation such class be entitled to vote or not; and the affirmative vote of a majority in interest of each such class of preferred stock so affected by the amendment shall be necessary to the adoption thereof, in addition to the affirmative vote of a majority of every other class of stock entitled to vote thereon, but the certificate of incorporation may contain provisions requiring the affirmative vote of a larger proportion of such preferred stock for the adoption of such amendment."

In view of this language in the act, it is clear that the stockholders may amend the certificate in the manner suggested by the proposed amendment, provided all the requirements of the section are complied with.

But it is contended that the amendment proposed offends against another provision of the law embodied in *Section* 4*a*. That provision is, as follows:

"Any corporation may, if so provided in its certificate of incorporation or in an amendment thereof, issue shares of stock (other than stock preferred as to dividends or preferred as to its distributive share of the assets of the corporation or subject to redemption at a fixed price) without any nominal or par value. Every share of such stock without nominal or par value shall be equal to every other share of such stock, except that the certificate of incorporation may provide that such stock shall be divided into different classes with such designations and voting powers or restriction or qualification thereof as shall be stated therein, but all such stock shall be subordinate to the preferences given to preferred stock, if any."

The particular clause of the amendment that is said to offend against this section is the clause which provides that after paying the preferred dividends and seven dollars per annum on the no par value common stock, "further distribution of surplus or net profits by way of dividends shall, if, as and when made, be payable in such amounts as the board of directors may from time to time determine." It is said that this clause gives to the no par value common stock a preference and under the above quoted section it is not permissible to give such class of stock a preference. The error in this contention lies in the fact that the clause in question does not give a preference to the no par value stock. The amendment creates two classes of stock, to-wit, preferred and no par value common stock. The preferred stock is preferred as to dividends and on final distribution, or dissolution. These preferences are given as against the common stock. After these preferences are taken care of, all that remains is for the benefit of the common stock. There is no attempt to prefer the no par value common stock over the only other stock authorized, viz. the preferred. If the clause objected to can have any effect at all, it is to place a restriction on the no par value common stock. But it does not, in fact have even such an effect, because the clause does only what the law itself provides, namely, places in the hands of the directors the discretion to determine when and, in what amount dividends shall be allowed to the common stock.

On neither of the grounds urged as objections to the proposed amendment should the preliminary injunction issue.

2. Should the payment of the dividend be restrained? The pertinent sections of the act bearing on this question are, as follows:

Opinion.

"*Section* 34.    *Dividends; Reserves*:—The directors of every corporation created under this chapter shall have power, after reserving over and above its capital stock paid in, such sum, if any, as shall have been fixed by the stockholders, to declare a dividend among its stockholders of the whole of its accumulated profits, in excess of the amount so reserved, and pay the same to such stockholders on demand; provided, that the corporation may, in its certificate of incorporation, or in its by-laws, give the directors power to fix the amount to be reserved.

"*Section* 35.  *Dividends; How Declared and Paid; Violations of Sections; Penalty; Exoneration from Liability*:—No corporation created under the provisions of this chapter, nor the directors thereof, shall make dividends except from the surplus or net profits.   Dividends may be paid in cash or capital stock at par, or in the case of stock without par value, dividends in capital stock may be paid at a price fixed by the board of directors, but otherwise the corporation shall not divide, or in any way pay to the stockholders, or any of them, any part of its capital stock, except according to this chapter, and in case of any wilful or negligent violation of the provisions of this section the directors under whose administration the same may happen shall be jointly and severally liable in an action on the case at any time within six years after paying such dividend to the corporation and to its creditors or any of them in the event of its dissolution or insolvency, to the full amount of the dividend made or capital stock so divided, or paid out, with interest on the same from the time such liability accrued; provided, that any director who may have been absent when the same was done or who may have dissented from the act or resolution by which the same was done, may exonerate himself from such liability by causing his dissent to be entered at large on the books containing the minutes of the proceedings of the directors at the time the same was done, or forthwith after he shall have notice of the same, or by causing a true copy of said dissent to be published, within two weeks after the same shall have been so entered, in a newspaper published in the county where the corporation has its principal office."

Testimony in the form of affidavits was presented which dealt, somewhat in detail, with the financial condition of the company, with the view of disclosing whether the company had a surplus or net profits from which dividends might be declared. It is not necessary to analyze this testimony, because the question before the Chancellor narrowed itself at the hearing to one of law.

It appears that the company has issued and outstanding about $3,136,000 par value of its stock, preferred and common. In the ascertainment of whether there is a surplus or net profits from which dividends may be paid, the complainant contends that this sum must be set down as the value of the capital of the com-

pany; and that, being so set down, the evidence discloses that there is no surplus or net profits available for the dividend in question.

On the other hand, the defendants contend that, notwithstanding the par value of the capital stock outstanding is the above sum, yet the evidence shows that the actual value realized from the sale of the stock outstanding was $1,714,596.56; that this is the sum that must be set down as the capital of the company; and that, being so set down, the evidence discloses that there is a surplus or net profits available for the dividend in question.

Thus the question of law is presented: Is the capital stock, above which there must be surplus or net profits before dividends may be paid, to be measured in terms of par value outstanding, or in terms of actual value realized? Is it share capital outstanding at par, or actual capital realized therefrom?

There are two points of view, designated herein as first and second, from which this question is to be discussed. I shall discuss the question from each point of view, and in doing so shall ignore that there is a point of view other than the one being for the moment discussed.

First. The first point of view is, that the phrase "capital stock" in *Section* 35 has some pertinency to the question of how the ascertainment of surplus or net profits is to be arrived at. The phrase occurs at several places in the section. But the appearance of it in the following clause is what has been particularly emphasized:

"But otherwise the corporation shall not divide, or in any way pay to the stockholders, or any of them, any part of its capital stock, except according to this chapter."

It is said that paying of a dividend when there is no surplus to justify same, constitutes a dividing or paying out of the capital stock of the corporation contrary to the inhibition of the foregoing clause. To ascertain whether there is a surplus, or there are net profits, we must balance assets against liabilities and list "capital stock" among the liabilities. In this process of ascertainment of surplus or net profits, the complainant insists that the term "capital stock" must be listed at the par value of the outstanding

shares, while the defendant insists that it must be listed only at the actual value realized from the sale of the outstanding shares.

Under the Constitution and laws of this state, it is permissible for a corporation to issue its capital stock in exchange for property less in value than the par of the stock; but an agreement that such stock, so issued, shall be full paid and non-assessable, is forbidden as against the company or its creditors. *DuPont, et al., v. Ball, et al.*, 11 *Del. Ch.* 440, 106 *Atl.* 39, 7 *A. L. R.* 955; *Scully v. Automobile Finance Co., et al.*, 11 *Del. Ch.* 359, 101 *Atl.* 908.

In order for the complainant to make out his contention, that the "capital stock" must be listed among the liabilities at the par value thereof, must he not adopt the theory that the law conclusively presumes that capital stock in every case has been issued in return for actual value equal to the par value? Yet to so presume, is to run counter to what the law as a matter of fact permits.

*Section* 34 authorizes the directors "after reserving over and above its capital stock paid in, such sum, if any, as shall have been fixed by the stockholders, to declare a dividend among its stockholders of the whole of its accumulated profits, in excess of the amount so reserved, and pay the same to such stockholders on demand."

If "capital stock" in *Section* 35 must be listed among the liabilities at par value, then what is to become of the provisions in *Section* 34 that in substance require it to be listed in terms of "paid in" value.?

Upon the point that for the purpose of arriving at whether there is a surplus available for dividends, "capital stock" must be listed at par among liabilities, the complainant cited the case of *Hyams v. Old Dominion Copper Mining & Smelting Co.*, 82 *N. J. Eq.* 507, 89 *Atl.* 37. In that case at page 513 of 82 *N. J. Eq.*, at page 39 of 89 *Atl.* the following language is used:

"Therefore, before reaching any conclusion on the question of the ability of the corporation to pay dividends lawfully, we must inquire into its assets and liabilities and ascertain whether, after payment and satisfaction of all liabilities, taking into account the liability to redeem the capital stock at par, there still remains a fund out of which the proposed dividend can be paid without impairment of the capital, or whether there are net profits arising from the business which can be used for that purpose."

But it is to be observed that so far as the *Hyams Case* discloses, the capital paid in and on hand was equal to the amount of the capital stock outstanding at par. The facts in that case, therefore, render the above language inapplicable to the case before me.

The case of *Goodnow v. American Writing Paper Co.*, 73 *N. J. Eq.* 692, 69 *Atl.* 1014 (*s. c.*, before the Vice Chancellor in 72 *N. J. Eq.* 645, 66 *Atl.* 607), is in point upon the case now before this court under the point of view that I am now considering. The New Jersey General Corporation Law, in *Section* 47 (2 *Comp. St.* 1910, *p.* 1629) thereof, is similar to *Section* 34 of our act. *Section* 30 of the New Jersey act is as follows:

"The directors of a corporation shall not make dividends except from its surplus, or from the net profits arising from the business of such corporation, nor shall it divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of such corporation, or reduce its capital stock except as authorized by law."

It is to be observed that this *Section* 30 in substance is the same as our *Section* 35, except that the New Jersey section omits the following language of our *Section* 35:

"Dividends may be paid in cash or capital stock at par, or in the case of stock without par value, dividends in capital stock may be paid at a price fixed by the board of directors, but otherwise," etc.

The Court of Errors and Appeals of New Jersey, 73 *N. J. Eq.* 692, 69 *Atl.* 1014, in construing the New Jersey act held, that for the purpose of ascertaining whether there is a surplus available for the payment of dividends the term "capital stock" in *Section* 30 of the act is equivalent to "capital stock paid in," which is the phrase employed in *Section* 47 of the New Jersey act. It would, therefore, appear that the New Jersey Court of Errors and Appeals, in the case before referred to, is an authority in support of the view that "capital stock" as employed in *Section* 35 of our act means the same thing as "capital stock paid in."

If the controverted question is to be determined in light of the first point of view, to which reference was made a moment ago, namely, that *Section* 35 has some pertinency to the problem of how to ascertain surplus or net profits, then I am clearly of the opinion

that the proposed payment of the dividend is not a dividing or paying of capital stock, within the meaning of said section.

Second.  But has *Section* 35 any pertinency, or relevancy, to the question of how to ascertain the existence of surplus or net profits?  I entertain the view that *Section* 35 has no relevancy whatever to this question.  This is the second point of view, in the light of which the case may be considered.

If this point of view be the correct one, then all that is left to determine is whether the dividend already declared is permissible within the meaning of *Section* 34.  Clearly it is, for that section requires "capital stock paid in" to be charged off and then allows dividends to be declared out of the surplus after taking care of such sum as may be fixed by the stockholders as a reserve.  Inasmuch as there is no provision in this case for a reserve, the company has ample funds over and above its "paid in" capital to warrant the dividend in controversy.

It seems clear that *Section* 35 is not meant in any wise to serve the purpose of defining the method by which the existence, or non-existence, of surplus or net profits is to be ascertained.  The first clause of the section prohibits the making of a dividend except from surplus or net profits.  It in no wise undertakes to define what method of arriving at a surplus or net profits shall be pursued.  The second clause of the section provides that—

"Dividends (of course, so declared from surplus or net profits) may be paid in cash or in capital stock at par, or in the case of stock without par value, dividends in capital stock may be paid at a price fixed by the board of directors, but otherise the corporation shall not divide, or in any way pay to the stockholders, or any of them, any part of its capital stock, except according to this chapter," etc.

What is the force and effect of the word "otherwise" in the foregoing clause?  It is to be noted that the phrase "capital stock" is employed three times in the clause.  Certainly the first two times it is used, it clearly means shares of stock remaining in the control of the company and not outstanding.  The word "otherwise" would seem clearly to carry over to the phrase when it is again immediately used, the same meaning that the phrase had in its preceding connection.  There is no other conclusion that I

can draw from the language employed. If this be true, then the disputed phrase "capital stock" in *Section* 35 means share capital.

*Section* 35 is not the section that is meant to specify the law's plan of arriving at surplus or profits available for dividends. All that the section is meant to state is that dividends cannot be made except from surplus or net profits; that, as to the method of payment thereof, the same may be paid in cash or capital stock; but, unless capital stock is issued for dividends made from surplus or net profits, the same may not be issued except as provided by this chapter; that is, except by way of sale for cash, labor done, personal property, or real property, or leases thereof. *Section* 4*a*; *Section* 14. *Section* 35, in the particulars discussed, deals in an inclusive way with the subject of disposing of the shares of stock into which the capital is divided. I can see nothing in the section that justifies the point of view that it is intended to relate to the method, or manner, of arriving at the ascertainment of whether there is a surplus, or whether there are net profits, from which dividends may be paid.

In my view of the matter, *Section* 34 disposes of the question in controversy. I am forced to this view by what seems to me to be the plain intent and meaning of the language of the act.

But whether this view, or the first point of view mentioned, be the correct one, is immaterial; for in either event the conclusion is the same, namely, that in ascertaining whether there is a fund available for dividends, capital must be put down at its paid in and not at its par value.

The reasoning by which the construction placed on the phrase "capital stock" in *Section* 35 is arrived at, it should be said, is not in conflict with the reasoning of the Court of Errors and Appeals of New Jersey in the *Goodnow Case*, because of the difference in language between our *Section* 35 and the corresponding *Section* 30 of the New Jersey act, above pointed out.

It follows, from what has been said, that the preliminary injunction against the paying of the dividend in question ought not to be issued.

The present rule should, therefore, be discharged, and the restraining order heretofore issued should be vacated.

Let an order be prepared to this effect.