**B & H WAREHOUSE, INC.,**
**Plaintiff-Appellant,**

v.

**ATLAS VAN LINES, INC.,**
**Defendant-Appellee.**

No. 72-3555.

United States Court of Appeals,
Fifth Circuit.

March 6, 1974.

---

Daniel H. Benson, Lubbock, Tex., W. D. Benson, Jr., Kingsland, Tex., for plaintiff-appellant.

James K. Presnal, Austin, Tex., Herbert Burstein, New York City, for defendant-appellee.

Before TUTTLE, DYER and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This case involves plaintiff-shareholder's claim that the defendant corporation converted plaintiff's shares by restricting plaintiff's right to sell or transfer them. The restriction provides that before alienating the shares, plaintiff must offer them to the corporation at book value, which, plaintiff alleges, is significantly less than the true market value of the shares. Plaintiff seeks damages of $60,000, which is alleged to be the difference between the price which plaintiff could receive in the open market absent the restriction, and the book value of the shares. In the alternative, plaintiff seeks a declaratory judgment that the restriction is invalid as applied to it. At trial, the district court sustained the position of the defendant, holding that an amendment to the corporate charter enacted after plaintiff acquired its shares restricted its right to alienate the stock, and did not constitute a conversion.[1] We reverse.

I

Defendant-appellee Atlas Van Lines, Inc. (Atlas) is a Delaware corporation engaged in the interstate transportation of household goods throughout the continental United States. It was incorporated May 19, 1948. Included in its charter was the following paragraph:

"FOURTEENTH. The corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this restriction."

Plaintiff-appellant B & H Warehouse, Inc. (B&H), a Texas corporation, acquired 30 shares of Class A common stock in Atlas in 1949. At that time, there were no restrictions on the sale of the stock.

On August 1, 1950, a voting trust certificate was issued to B & H in exchange for these 30 shares of stock. At that time, the stock certificates were transferred to Atlas, which has retained possession of them. The trust agreement restricted B & H from alienating the stock without first giving Atlas the option to buy the stock at book value, which is $10,000 for the 30 shares, or $333.33 per share. The voting trust expired on November 30, 1961, and has never been renewed.

In 1966, the Atlas charter was amended to provide that the Class A common stock could not be sold until the shares had first been offered in writing to the corporation at a price equal to the book value of the shares, plus $100.00 per share for good will.

In 1967, the Delaware corporation law was amended by the addition of Section 202(b), which limits the power of corporations to restrict alienability of their stock.[2]

In 1970, Atlas again amended its charter. It now provides that before selling shares of Class A common stock, a shareholder must offer the shares to the corporation for the book value of $333.33 per share. B & H voted against this amendment to the charter. It is conceded that both the 1966 and the 1970 amendments were properly adopted according to the Atlas charter and the existing Delaware law.

1. 348 F.Supp. 517 (N.D.Tex.1972).

2. 8 Del.C. § 202(b) provides:
 A restriction on the transfer or registration of transfer of securities of a corporation may be imposed either by the certificate of incorporation or by the by-laws or by an agreement among any number of security holders or among such holders and the corporation. No restriction so imposed shall be binding with respect to securities issued prior to the adoption of the restriction unless the holders of the securities are parties to an agreement or voted in favor of the restriction.

## II

In its complaint, B & H sought to recover $60,000 in damages from Atlas for conversion of its stock. In the alternative, B & H sought a declaratory judgment that the restrictions placed on the stock by Atlas are ineffective against B & H. The district court held that the restriction contained in the voting trust agreement was ineffective to bind B & H because the trust agreement expired in 1961, and the restriction could not outlive the trust agreement. The court also held that § 202(b) invalidated the 1970 amendment with respect to B & H because B & H was not a party to an agreement and did not vote in favor of the restriction.

The court held, however, that the 1966 amendment was valid and binding on the B & H and did not constitute a conversion. The court found that prior to the 1967 enactment of § 202(b), Delaware law did not contain the requirement that the shareholder must have indicated its approval of the restriction before being bound by it. It held further, that § 202(b) should not be interpreted to have retroactive effect, that is, to affect amendments adopted before its effective date. In addition, the court held that the amendment was permitted by the Delaware Corporation Law and Paragraph 14 of the Atlas charter. Therefore, the court entered judgment for the defendants.

## III

■ The district court was correct in holding that the restriction on alienation contained in the voting trust agreement expired when the trust itself expired. We can find no basis for holding that restrictions which are agreed to as part of a voting trust with a definite expiration date outlive the trust. Such a holding would be, in effect, an amendment of the trust agreement.

■ In addition, the district court was correct in holding that the 1970 amendment to the charter is not binding on B & H. Because B & H neither entered an agreement containing the restriction nor voted in favor of the restriction, it is protected from the effect of the restriction by § 202(b).

■ We cannot, however, uphold the district court's determination that B & H is bound by the 1966 charter amendment. Although courts in many cases have upheld restrictions similar to the one contained in the 1966 amendment, each of those cases has important distinguishing features.

■ It should be noted first that the validity of any restriction is to be determined according to the law of the state of incorporation—in this case, Delaware. Palmer v. Chamberlin, 191 F.2d 532 (5 Cir. 1951). See, Restatement (Second) of Conflicts § 303 (1971). In spite of both parties' valiant attempts to find a case in point in Delaware law, we are left without any solid precedent for our decision. Nevertheless, we have determined that, were this question presented to the courts of Delaware for decision, they would hold the restriction invalid.

To support the restriction, defendants rely primarily on Lawson v. Household Finance Corporation, 17 Del.Ch. 343, 152 A. 723 (1930). Lawson was the transferee of 100 shares of Class B common stock. He brought a bill in the Court of Chancery seeking to compel the defendant Delaware corporation to transfer the shares of its books from the transferor to the plaintiff. This the defendant refused to do, basing its refusal on certain provisions of its certificate of incorporation, as amended, and its by-laws. Those provisions, to the extent they are relevant here, required a person who wished to transfer his stock to notify the corporation of his intention. The transferor and the corporation would then each appoint an appraiser, and those two appraisers would appoint a third. The three appraisers were then to "determine their [the share's] value as at the time of such appraisal and shall forthwith give written notice of their determination to both parties. In determining the value good will shall not

be considered." 152 A. at 725. The board of directors of the corporation would then have 20 days to purchase the shares for the price set by the appraisers.

Existing Delaware corporation law authorized corporations to make by-laws relating to the transfer of their stock, and also provided that a corporation and its directors shall have all the powers granted by its certificate of incorporation "so far as the same are necessary or convenient to the attainment of the objects set forth in such charter or certificate of incorporation." Rev.Code of 1915, Ch. 65, § 3, quoted at 152 A. 726. Noting that the defendant corporation was in the small loan business and required competent, honest and trustworthy employees, the court held that the corporation's practice of providing employees with an interest in the business was a valid means of effectuating its purposes, and the right of first refusal outlined in the certificate of incorporation was a reasonable way of furthering the scheme of employee ownership.

The court, after holding the restriction contained in the by-law valid under the corporation law of Delaware, went on to hold that the restriction was also valid as part of the contract between the corporation and its shareholders. The shareholders could be held to have agreed to the restriction when they acquired the stock, since the restriction was not only included in the articles of incorporation, but was also printed on the back of the stock certificates. In short, the court upheld the restriction, both as a by-law and as a contract.

*Lawson* is important, but it is not directly in point for two reasons. First, the restriction on stock transfer was included in the original articles of incorporation of the Household Finance Corporation, in addition to being printed on all the stock certificates. Thus, the Delaware court was obviously justified in upholding the restriction on a contract theory, in addition to sustaining its validity as a by-law. In this case, the restriction was added to the by-laws after the plaintiff acquired its shares of stock. While it may be that the plaintiff impliedly agreed to this kind of restriction because of the fourteenth paragraph of the articles of incorporation (see section IV, *infra*), no such restriction was included when the plaintiff acquired the shares. A second difference is that the corporation in Lawson could exercise its right to buy only at the appraised value of the shares. Although "good will" was specifically excluded from consideration by the appraisers, their determination of the "value" of the stock would certainly bear some relationship to market price. This is not to imply that it is never possible for a corporation to reserve a right of first refusal at a price less than the market price. See, e. g., Doss v. Yingling, 95 Ind.App. 494, 172 N.E. 801 (1930); Allen v. Biltmore Tissue Corp., 2 N.Y.2d 534, 161 N.Y.S.2d 418, 141 N.E.2d 812 (1957). Nevertheless, the *Lawson* court clearly indicated that its upholding of the restriction was based on a holding that the restriction was reasonably related to the purposes of the corporation, and the price at which the stock is to be offered clearly relates to the reasonableness of the restriction.

The significance of *Lawson* is that it states the applicable Delaware law on one aspect of the area of restrictions on stock transfer, and it is the leading case in a line of precedent which has been followed in many jurisdictions in this country. Martin v. Graybar Electric Co., 285 F.2d 619 (7th Cir. 1961); Palmer v. Chamberlin, *supra*; Vannucci v. Pedrini, 217 Cal. 138, 17 P.2d 706 (1932); Doss v. Yingling, *supra*; New England Trust Company v. Abbott, 162 Mass. 148, 38 N.E. 432 (1894); Baumohl v. Goldstein, 95 N.J.Eq. 597, 124 A. 118 (Ct. of Ch. 1924); Allen v. Biltmore Tissue Corp., *supra*; Nicholson v. Franklin Brewing Co., 82 Ohio St. 94, 91 N.E. 991 (1910); 12 Fletcher CycCorp (Perm. Ed.) § 5461.3. It should be noted that several of these cases, while specifically holding that the challenged restriction was invalid as a by-law, usually be-

cause unauthorized by the state's corporation statute, upheld the restriction as a contract by the shareholders among themselves, or between the corporation and its shareholders. See, e. g., Palmer v. Chamberlin, *supra*; Nicholson v. Franklin Brewing Co., *supra*. It is because the restriction in this case was adopted after, and not before, plaintiff acquired its shares of stock, that this line of cases is of limited usefulness in determining the validity of the challenged restriction.

## IV

Another line of cases involves restrictions and other disabilities attached to stock after the shareholder challenging the disability acquired his shares. Fortunately, there is a long line of Delaware cases dealing with whether, and under what conditions, these later restrictions may be applied to someone who acquired his shares before the restriction or disability was imposed.

The wellspring of this line of Delaware cases is Peters v. United States Mortgage Co., 13 Del.Ch. 11, 114 A. 598 (1921).. The certificate of incorporation of the defendant corporation defined the authorized capital of the corporation, provided that the preferred stock would receive cumulative dividends of 7 per cent per year, that the common stock could receive from the surplus (after the preferred stock had been paid) dividends of 7 per cent per year, and that the remaining surplus would be divided in certain proportions between the surplus account and the preferred and common stockholders. The directors proposed an amendment to the certificate that would deprive the preferred stock of any opportunity to share in the apportionment of surplus and net profits, change the common stock from par to no-par stock, and leave the distribution of surplus in the discretion of the directors.

The court noted:

A corporation, in the sale and issuance of its stock, assumes a contractual relation to the shareholder. For the terms of the contract, the rights of the stockholder and the duties of the corporation, reference is to be made to the appropriate provisions of the certificate of incorporation and the law of the sovereign conferring the corporate franchise. Unless there be some provision in either the law or the corporate certificate reserving the power to do so, there can be no alteration in the terms of the contract under which the shareholder, as such, possesses his rights, without his consent. If, however, the right to change or alter the stockholder's contract be reserved in proper way, then no shareholder can complain against a proposed change therein, for the very plain reason that one of the terms by which he holds his contract is that the same may be altered.

\* \* \* \* \* \*

The only question, therefore, in this case is whether there is power reserved in the defendant company to make the change in question. . . . [emphasis added].

The court held that the corporation had properly reserved the power to amend in two ways. First, there was an explicit provision in the articles of incorporation allowing amendments, and second, the General Corporation Law, which is implicitly included in the charter of every Delaware corporation, allowed amendments. Therefore, the court held, the amendments were proper.

The very broad language in *Peters* seems to support the position of the defendants in this case. If the only question is whether the corporation reserved the power to amend its certificate of incorporation and by-laws, the answer is easy: it did so in the fourteenth paragraph of its certificate, quoted above.

In addition, the Delaware corporation law, 8 Del.C. § 242, allows a corporation to amend its certificate of incorporation by "changing the number, par value, designations, preferences, or relative, participating, optional, or other special rights of the shares, or the quali-

fications, limitations or restrictions of such rights . . ." or by making "any other change or alteration in its certificate of incorporation that may be desired.[3] As the court in *Peters* stated, "There is impliedly written into every corporate charter in [Delaware], as a constituent part thereof, every pertinent provision of [the Delaware] Constitution and statutes." 114 A. at 600. Thus, just as in *Peters*, the automatic inclusion of the Delaware corporation law in the Atlas certificate of incorporation, if taken literally, gives Atlas the power to include the challenged restriction, or any other provision, in an amendment.

■ Later Delaware cases, however, make the inquiry more complex. Only two years after *Peters*, the Chancellor decided the case of Morris v. American Public Utilities Co., 14 Del.Ch. 136, 122 A. 696 (1923). *Morris* concerned substantial changes in the relation of various categories of shareholders and the relation of the shareholders to the corporation itself. In its statement of facts of the case, the court stated:

> The parties by their stipulation agree that the rights of the complainants as preferred stockholders are changed by the amendment in the following respects:
>
> (a) Their stock is made junior to two new classes of preferred stock created by the amendment so far as all privileges and rights are concerned.
>
> (b) Accumulated dividends to the amount of 24 per cent are cancelled.
>
> (c) The redemption figure of $105 per share and the amount of all accumulated dividends accrued thereon, as provided in the original certificate, was changed, so that thereafter such stock could be redeemed by the corporation at $100 per share, with cumulative dividends only from the date of the adoption of the amendment.
>
> (d) The right of the preferred stock to vote was taken away from said preferred stock and was thereafter vested only in the common stock of the corporation.

Although purporting to follow the holding of *Peters*, the Chancellor actually went further than a mere mechanical test to determine whether the changes were authorized by the certificate of incorporation. With respect to provision (b), *supra*, the Chancellor said, "After careful consideration, I am persuaded that the attempt to destroy the right of an objecting preferred stockholder to accrued and unpaid dividends cannot be sustained." *Id.* 122 A. at 701. "To hold otherwise would be to say that other people might take from a man his vested property right against his will and appropriate it to others." *Id.* at 704. The

---

3. 8 Del.C. § 242(a) provides:

 (a) Any corporation of this State existing prior to the tenth day of March, 1899, whether created by special act or general law, or any corporation created under the provisions of this chapter, may, from time to time, when and as desired, amend its certificate of incorporation by—

 (1) Addition to its corporate powers and purposes, or diminution thereof, or both; or

 (2) Substitution of other powers and purposes, in whole or in part, for those prescribed by its certificate of incorporation; or

 (3) Increasing or decreasing its authorized capital stock or reclassifying the same, by changing the number, par value, designations, preferences, or relative, participating, optional, or other special rights of the shares, or the qualifications, limitations or restrictions of such rights, or by changing shares with par value into shares without par value, or shares without par value into shares with par value either with or without increasing or deceasing the number of shares; or

 (4) Changing its corporate title; or

 (5) Making any other change or alteration in its certificate of incorporation that may be desired.

 Any or all such changes or alterations may be effected by one certificate of amendment.

 Every certificate of incorporation as so amended, changed or altered, shall contain only such provisions as it would be lawful and proper to insert in an original certificate of incorporation made at the time of making such amendment.

court distinguished *Peters* "because it dealt, not with dividends past due, but with the right to dividends in the future." *Id.* at 703. Nevertheless, it should be noted that although the court invalidated provision (b) on the grounds that it deprived shareholders of a "vested property right," the court upheld the provision (c), which reduced the redemption figure of the stock from $105, plus all accumulated dividends, down to $100, plus cumulative dividends only from the date of the adoption of the amendment. To justify this result, the court stated only that "the law under which the company was incorporated authorizes a change of this kind." The only reasonable way to reconcile the court's treatment of provision (b) on one hand, and its treatment of provision (c) and its citation of the *Peters* case, on the other, is to conclude that the explicitness of the reservation of the right to amend is crucial. The specificity of the right to amend must be considered along with the nature of the interest being affected by the subsequent amendment. The more significant the interest being infringed upon, the more explicitly the right to affect it must be stated, if it is to affect previously issued stock.

Morris was followed with respect to its holding on the impossibility of destroying rights to accrued dividends in Keller v. Wilson & Co., 21 Del.Ch. 391, 190 A. 115 (1936), but courts outside Delaware have suggested that the subsequent decision of Federal United Corp. v. Havender, 24 Del.Ch. 318, 11 A.2d 331 (1940) may have overruled *Keller*. Hottenstein v. York Ice Machinery Corp., 136 F.2d 944 (3rd Cir. 1943); Bove v. Community Hotel Corp., 105 R.I. 36, 249 A.2d 89 (1969). In particular, the court in *Bove* has suggested that the test is not whether the rights being vitiated are "vested," but whether the change effectuated by the amendment is one authorized by the legislature.

In Maddock v. Vorclone Corp., 17 Del. Ch. 39, 147 A. 255 (1929), the court considered a proposed amendment to the defendant's certificate of incorporation which would take from the common stockholders the right to vote cumulatively at meetings for the election of directors. Noting that the corporation had the power to amend the certificate, both because of the general power to amend given corporations in Section 26 of the General Corporation Laws, and because of a reservation of the right in the certificate itself, the court stated:

> The only question then which the pending bill presents is whether or not the proposed amendment is one which lies outside the scope of section 26 of the act. . . . *Id.* 147 A. at 255.

The court answered in the negative, and refused to enjoin the amendment.

Finally, in Gottlieb v. Heyden Chemical Corporation, 32 Del.Ch. 231, 83 A.2d 595 (Ct. of Ch. 1951), rev'd on other grounds, 33 Del.Ch. 283, 92 A.2d 594 (S.Ct.1952), the Chancellor held that shareholders' pre-emptive rights may be removed by amendment after acquisition of the stock because such an amendment is authorized by Section 26 of the corporation law (now 8 Del.C. § 242). The only question, the court said, is whether § 26 authorizes the change.

Thus, the Delaware courts, while following the general rule that any amendment is permissible if it is authorized by the articles of incorporation (and, by implication, the corporation law), have at times vacillated from that position and read into the unrestricted constitutional provisions certain limitations. Exceptions are unusual, but as the *Morris* case demonstrates, they do exist.

## V.

The *Lawson* line of cases demonstrates that if the restriction being contested had been included in the original articles of incorporation, or had been a part of the by-laws when B & H acquired its stock, there would be no question that the restriction would be valid. Alternatively, if B & H had specifically agreed to the possibility that its shares might at some future time be encum-

bered with such a restriction, we would have no trouble in upholding the restriction.

But neither situation confronts us here. In this case, all the plaintiff agreed to was the very general right to amend which is included in virtually every corporate charter and in the Delaware corporation law. What we must decide is whether these provisions provided plaintiff with sufficient notice that it can be held to have assented to such a change.

The case that comes closest to this one factually is Tu-Vu Drive-In Corp. v. Ashkins, 61 Cal.2d 283, 38 Cal.Rptr. 348, 391 P.2d 828 (1964). "This case presents the issue of whether a corporation may enforce a bylaw restricting alienation of stock against a nonconsenting stockholder who acquired his stock prior to the enactment of the bylaw." 38 Cal.Rptr. at 349, 391 P.2d at 829. That restriction provided the corporation with a right of first refusal, just as the restriction in the case at bar does. The difference, however, was that the right could be exercised only at the price at which the shares had been offered to the proposed transferee. In upholding the by-law, the California court held that the restriction was reasonably related to a valid corporate purpose, and that this purpose should be vindicated, even at the expense of the shareholder's right to choose a buyer for his stock. "In the light of the legitimate interests to be furnished by the bylaw, Ashkins' asserted right becomes 'innocuous and insubstantial.' [citation omitted]. The by-law merely proscribes Ashkins' choice of transferees while insuring to her the price and terms equal to those offered by the outsider." *Id.* 38 Cal.Rptr. at 350, 391 P.2d at 830. *Ashkins* was followed in Groves v. Prickett, 420 F.2d 1119 (9 Cir. 1970).

In the case at bar, however, we have a situation in which the price and terms of the right of first refusal are very different from what B & H could receive on the open market. Evidence was presented which tended to show that while the market price of the stock was $50,000 to $70,000, the book value at which B & H would have to offer the stock to the corporation was only $13,000. Thus, this by-law inflicts a more substantial disability upon the shareholder than did the by-law in the *Ashkins* case.

A case reaching a result contrary to *Ashkins* is Sandor Petroleum Corporation v. Williams, 321 S.W.2d 614 (Tex. Civ.App.1959). In *Sandor*, the corporation had cancelled unrestricted stock certificates and issued in their place certificates containing a restriction similar to the one being considered here. The Texas court held, "Such a restriction on previously unrestricted stock would unreasonably restrain and prohibit its [the stock's] sale and transfer and could result in depriving the owner of the full value of his stock." 321 S.W.2d at 618. It must be remembered, of course, that in *Sandor*, the court was dealing with a situation in which the original stock certificates had been cancelled, and the opinion also depended on an interpretation of the Texas corporation statute for its result.

## VI

 Of course, cases from other jurisdictions are helpful only as sources of ideas, since our task in this case is to determine the validity of the restrictions under Delaware law. After a careful consideration of all of the factors in this area of the law, we conclude that the courts of Delaware would rule that the restriction is invalid. Although the restriction would have been valid had it been in effect when B & H obtained its stock, to add it afterwards contravenes two important policy considerations prevalent in the law of Delaware. The first is the rule that restraints on alienation are disfavored generally. Lawson v. Household Finance Corp., *supra*. We interpret this rule of law to mean that whenever there is ambiguity or uncertainty, the restraint ought not to be enforced. The second is that restrictions on alienation are to be allowed only so

long as they reasonably relate to a valid corporate purpose. There is a valid purpose involved in this case. That is, Atlas is organized as a cooperative association of transport companies, that and the restriction was obviously intended to retain control of Atlas among its associated moving companies. Nevertheless, we find that the restraint being challenged is too restrictive to be sustained by reference to this purpose. The interest of Atlas in restricting ownership to associated movers could have been accomplished, at least with respect to those obtaining stock before the amendment took effect, by providing that the corporation would have its right of first refusal based on the market price of the shares. We would then have a situation like the one in *Tu-Vu*, in which only the choice of buyer and not the amount of money to be received for the stock would have been restricted. Such a mechanism would have been much more closely related to the valid corporate purpose. But in forcing shareholders to offer their shares to the corporation at book value, Atlas has imposed a restriction significantly broader than necessary to effectuate its purpose. When this occurs, it cannot be said that the general grant of the power to amend contained in the fourteenth paragraph of the articles of incorporation suffices to validate the amendment. B & H can be held to have assented only to amendments reasonably related to a valid corporate purpose, not to any and all amendments which a majority of shareholders agree upon, regardless of their content. We are unwilling to hold that B & H consented to being bound by the contested restrictions because of the very vague language of the fourteenth paragraph.

The district court based its judgment for the defendants not only on the validity of the restriction contained in the 1966 amendment, but also on the doctrine of laches. In view of the lack of demonstrated prejudice to the defendants from the timing of plaintiff's suit, we must reverse on that question also.

Reversed and remanded.