# Baker's Appeal.

1. The stockholders of a corporation chartered by Act of Assembly in 1852 were given in all elections of directors one vote for each share of stock.

    *Held,* that Art XVI. § 4, of the Constitution of 1874, providing for cumulative voting, does not of itself affect in any way the vested right of the stockholders granted by their charter.

2. The directors of a corporation were given by their Act of incorporation " all the authority, powers and privileges necessary and proper for the management of the affairs thereof."

    *Held,* that it was not within the scope of the express or implied power of the board of directors to accept the provisions of the Constitution of 1874, and thus to bind the stockholders by section 4 of Art. XVI., referring to cumulative voting at elections of directors.

3. The Act of May 22d, 1878 (P. L., 84), entitled " An Act to require all private corporations applying to the state for aid to file in the office of the Auditor General their acceptance of the provisions of the Constitution " which authorizes the acceptance thereof by the board of directors at a regular or called meeting, applies only to charitable corporations having no stockholders vested with property rights. In the case of corporations for profit and having capital stock, the provisions of the Constitution can only be accepted in the method prescribed by the Act of April 17th, 1876 (§ 6, P. L., 33), by authority of a meeting of the stockholders called for that purpose, and the acceptance must be certified to the secretary of the commonwealth under the corporate seal.

4. The Act of March 24th, 1852 (P. L., 175), incorporating the American Academy of Music, provided that " in all elections of directors each stockholder shall have one vote for every share of stock which he may hold," and gave the directors generally " all the authority, powers and privileges necessary and proper for the management of the affairs

thereof." The directors without notice to the stockholders, under color of the Act of May 22d, 1878, resolved to accept the provisions of the new Constitution with the special intention of adopting the cumulative system of voting at elections for directors. At the next annual meeting of the stockholders to elect directors for the ensuing year a majority in number of those voting, but not a majority in interest, ratified the action of the directors, and an election of directors was then held in which the stockholders voted cumulatively or non-cumulatively at will. *Held,*

(1) That the action of the directors in assuming to accept the provisions of the new Constitution was void.

(2) That the Act of May 22d, 1878, did not apply to the American Academy of Music.

(3) That the attempted ratification of the action of the directors was invalid and ineffectual; and

(4) That the votes cast cumulatively at the election must therefore be thrown out, and the election determined from the votes cast non-cumulatively alone.

April 8th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN, J., absent.

APPEAL from the decree of the Court of Common Pleas No. 1, of *Philadelphia county:* Of January Term 1885, No. 73.

This was the appeal of Alfred G. Baker, George W. Biddle, Peter A. Keller, Charles Lennig, John Moss, Jr., R. A. F. Penrose, Samuel B. Thomas, Edmund Wright and John Wright, stockholders of the American Academy of Music, from the decree of the Court of Common Pleas No. 1, of Philadelphia county, dismissing a bill in equity filed by them against George S. Pepper, James L. Claghorn, L. C. Cleeman, Seth Comly, F. J. Dreer, Fred Graff, Daniel Haddock, Jr., Henry Whelen, Jr., Charles Hare Hutchinson and Beauveau Borie, directors of the American Academy of Music, and the American Academy of Music, to restrain the latter from casting or permitting to be cast, and from receiving or counting votes for directors and other officers at the next ensuing annual election according to the cumulative system, or in any other manner than that provided by the charter of the said corporation, and for the appointment of a Master to conduct the election and report the result to the court.

The complainants applied for a preliminary injunction before the respondents had filed their answers. The court however refused the injunction, and on June 2d, 1884, the day appointed for the annual meeting of stockholders to elect directors for the ensuing year, entered the following interlocutory order: "The court declines, upon an application on ex parte affidavits for a preliminary injunction, to decide the grave questions of constitutional law raised in this case. In

order, however, that there may be no difficulty hereafter in determining in what way the votes have been cast and the mode which has been adopted in arriving at the result of the election, the court directs that the tellers to be chosen by the stockholders in accordance with their charter, shall *First :* Permit the complainants and all other corporators to cast their votes cumulatively or otherwise, as to them· the votes shall seem proper. *Second :* That the said tellers shall preserve the ballots which are cast, showing whether the vote of the stockholder was cast cumulatively or otherwise. *Third :* That they shall make a copy of their report to the stockholders in which they declare the result of the election and their mode of computation of the ballots cast, and report it to this court to be filed therein."

On June 3d, 1884, the report of the officers of this election was filed, and also the answer of the American Academy of Music. On June 13th, 1884, the answer of George S. Pepper, former director of the American Academy of Music, was filed, and the case was then argued upon the bill, the answers and the report of the tellers. From these the following facts appeared : The American Academy of Music was incorporated under the Act of March 24th, 1852 (P. L., 175), for the purpose of erecting a building for operatic, dramatic ·*and other* entertainments, and to lease the same for such purposes. Section 3 of this Act gave certain of the corporators power to organize the corporation, and in person or by proxy to choose by ballot twelve persons to be directors for the year next ensuing, or until the next election. Section 4 provided that " the directors shall have power to adopt such by-laws, rules and regulations, not inconsistent with the laws of this commonwealth, as may be deemed expedient for the well being of this corporation, and generally shall have all the authority, powers and privileges necessary and proper for the management of the affairs thereof." Section 5 provided that " in all elections of directors each stockholder shall have one vote for every share of stock which he may hold."

On May 20th, 1884, the defendant directors, at an adjourned meeting without notice to the stockholders, passed the following resolution, which was sent to the office of the Auditor General and to the Secretary of State, a certificate of its registration in those offices being subsequently received by the board :

" Whereas, The Constitution of the commonwealth of Pennsylvania in article 16, § 4, provides that in all elections for directors or managers of a corporation each member or shareholder may cast the whole number of his votes for one

candidate, or distribute them upon two or more candidates as he may prefer ;

" And whereas, The second section of the Act of May 22d, 1878, provides that the acceptance of the provisions of the Constitution may be made by resolution adopted at a regular or called meeting of the directors or trustees, or other proper officers of any such corporation which shall be certified under the seal of the corporation and filed in the office of the Auditor General ; therefore be it

" *Resolved*, by the directors of the Academy of Music at a regular meeting of said directors held this date,

" First. That they hereby accept the provisions of the Constitution of the commonwealth of Pennsylvania of 1874.

" Second. That the president and secretary of the said American Academy of Music are authorized and directed forthwith to certify under the seal of this corporation such acceptance to the Auditor General of the commonwealth of Pennsylvania, and also to the secretary of the commonwealth of Pennsylvania."

The Act of Assembly of May 22d, 1878 (P. L., 84), is as follows :

" An Act to require all private corporations applying to the state for aid to file in the office of the Auditor General their acceptance of the provisions of the Constitution.

" Section 1. Be it enacted, that no general or special law shall be passed conferring a benefit upon any corporation, unless such corporation shall have previously filed in the office of the Auditor General the acceptance of the provisions of the Constitution.

" Sec. 2. That such acceptance may be made by resolution adopted at a regular or called meeting of the directors or trustees, or other proper officers of any such corporation, which shall be certified," &c.

At the meeting held June 2d, 1884, the report of the directors for the past year was read, which included a statement of their acceptance of the provisions of the Constitution of 1874 in reference to cumulative voting. A stockholder then proposed the following resolution :

" *Resolved*, That the reports of the board of directors and treasurer be and they are hereby accepted and approved, and that they be printed for the use of the stockholders." To which the following was moved as an amendment :

" *Resolved*, That the stockholders of the American Academy of Music hereby refuse to accept the provisions of the present Constitution of this commonwealth."

" *Resolved* : That the action of the Board of Directors of May 20th, 1884, in attempting to accept on behalf of this corpora-

tion the provisions of the Constitution of 1874, be, and the said action is, hereby expressly repudiated."

The mover of this amendment called for a stock vote on it, but the chair ruled the amendment out of order. A stock vote was then demanded upon the original resolution, which demand was likewise ruled out of order. An appeal was taken from the decision of the chair upon this point of order and a stock vote demanded upon the appeal. This was ruled by the chair to be out of order and the vote upon the appeal was taken by the stockholders rising, and the chair was sustained by 39 votes in favor of his ruling to 22 against it. It was then moved to amend the resolution by striking out the words "accepted and approved" so that it should provide simply for the finding of the report. This amendment was lost by a *viva voce* vote. The original resolution approving the report of the directors was then carried by a vote of 47 stockholders to 26, the stockholders rising and voting as individuals and without reference to their respective holdings of stock.

Upon motion the meeting then proceeded to elect directors for the ensuing year and tellers were appointed to conduct the election. There were 269 stockholders present at the meeting and of the 2891 shares of stock in the corporation 1660 voted non-cumulatively; 1085 were voted cumulatively; and 146 were not voted at all. Seven candidates, viz., Alfred G. Baker, George A. Heyl, Francis P. Steel, Henry Budd, John Wright, Charles M. Swain and Peter A. Keller received from 1610 to 1660 non-cumulative votes each. George S. Pepper, James L. Claghorn, Pierce Archer, L. C. Cleeman and Henry Whelen, Jr. received from 2520 to 2612 cumulative votes; and Chas. W. Potts, Charles Lenning, George W. Biddle, Simon Gratz and Joshua Z. Gregg received from 1515 to 1610 non-cumulative votes. Whether cumulative voting were legal or not, the first seven candidates above mentioned were elected. The contest was as to the remaining five places in the board. If the cumulative votes were to be received Messrs. Pepper, Claghorn, Archer, Cleeman and Whelen had been chosen. If the cumulative votes were to be thrown out, Messrs. Potts, Lennig, Biddle, Gratz and Gregg who had received the next highest number of non-cumulative votes had been chosen.

The Court, BIDDLE, J., filed the following opinion:

The question raised in this case is whether the provisions of the Constitution of 1874 have been legally accepted by the American Academy of Music.

It appears that at a meeting of the board of directors, held on the 20th of May, 1884, they accepted by resolution the

13 OUTERBRIDGE—30

provisions of the Constitution of 1874, and that a copy thereof was transmitted to the Auditor-General of the commonwealth.

This, it is alleged, was done under the provisions of the following Act of Assembly :—

(The court here quoted the Act of May 22d, 1878.)

If this were all, two questions would arise : first, whether this Act applies to corporations having stockholders, and, second, if it did, had the legislature power to authorize the directors, without submitting the question to the stockholders, to make such action valid. Both these propositions are denied by the complainants.

This, however, is not all that was done. It further appears that at the annual meeting of the stockholders, held June 2d, 1884, the board of directors made a report of the affairs and proceedings of the said corporation for the preceding year, in which they stated that they had " passed a resolution accepting the provisions of the Constitution of 1874, and a copy of that resolution, certified by the president and secretary of the academy, was forwarded for registration to the Auditor-General and Secretary of the commonwealth of Pennsylvania, and certificates of such registration had been received."

A resolution was then offered by one of the stockholders, " that the reports of the board of Directors and treasurer be, and they are hereby accepted and approved, and that they be printed for the use of the stockholders."

It was moved to amend this resolution by striking the words—" be and they are hereby accepted and approved," out of said resolution, which was put and lost, and the original resolution was adopted by a vote of forty-seven stockholders in favor to thirty-six opposed.

If this was lawfully and properly done, it would of course render unnecessary a discussion of the applicability and constitutionality of the Act of 1878.

The defect of this proceeding, as contended for by the complainants, is, that the corporation was bound by the Act of 1876, P. L. 33, and that, in accordance with its provisions, the acceptance must be—" duly authorized by a meeting of the stockholders called for that purpose," and that therefore the meeting was not competent to act upon the question. And also that the call for a stock vote had been refused on the adoption of the resolution of approval and disapproval.

This Act of 1876, which is amendatory of the general corporation Act of 29th April, 1874, was intended to point out the way by which an existing corporation could avail itself of the benefit of that Act, and had no application to corporations having no such wish. And we fail to find any Act of Assembly that even purports to direct a specific mode which all

corporations must pursue who desire to accept the provisions of the Constitution. We think, therefore, that any procedure which would act as an acceptance of a proposed amendment to the Constitution of the corporation would be a perfectly valid acceptance of the provisions of the Constitution of 1874.

The fifth section of the charter of the academy provides (Act March 24th, 1852):—

" That an annual meeting of the stockholders shall be held on the first Monday of June for the purpose of choosing directors, and for the transaction of such other business as may come before them, of which annual meeting the directors shall cause to be given at least twenty days' notice in two newspapers in the city of Philadelphia; in all elections of directors each stockholder shall have one vote for every share of stock which he may hold; at each annual meeting of the stockholders the directors of the preceding year shall submit to the meeting a full and fair statement of the affairs and proceedings of the corporation for such year, together with a full account of all moneys received and expended for the same, and they shall also produce for the inspection of the meeting or such committee as it may name, all of the books and accounts concerning the corporation. Special meetings of the stockholders may be called by order of the directors or by stockholders holding one fourth of the capital stock, on like notice to that required for the annual meeting, specifying, moreover, the object of the meeting."

It will thus be seen that " At each annual meeting of the stockholders, the directors of the preceding year shall submit to the meeting a full and fair statement of the affairs and proceedings of the said corporation for such year."

So that each stockholder must have known that the proceedings of their board of directors in accepting the provisions of the Constitution of 1874 must necessarily come before them for their approval in the ordinary course of business in that meeting, and they must also have known that at the annual meeting it is competent for them, in addition to choosing their directors, to transact " such other business as may come before them." In which these annual meetings are distinguished from the special meetings, where " the object of the meeting must be specified."

Had, then, this been an amendment to their charter which the directors had procured, it is probably the precise way in which it would have been presented for the acceptance of the stockholders.

The law which regulates stockholders' meetings in the absence of legislation to the contrary, is stated by Judge BELL,

in Commonwealth *v.* Cullen, 13 Pa. St. Rep., 133, as follows :—

"To make a vote of acceptance valid as the act of a corporation, it should be passed at a meeting duly convened, after notice to all the members. In such cases congregate deliberation is deemed essential, and where the opportunity for this is offered, the decision of the majority is binding, if no other mode be prescribed by the charter. The private procurement of a written assent, signed by a majority of the members, will not supply the want of a meeting. Such an expedient deprives those interested of the benefit of mutual discussion, and subjects them to the hazard of fraudulent misrepresentation and undue influence."

To the same effect was the decision of the Supreme Court of New Jersey, in Taylor *v.* Griswold, 14 N. J. Law, 227, where it is said :—" Until a different rule has been established, every question must be decided and every election determine by the majority, or, in other words, by the major part numerically of those who are personally present and voting. To illustrate my meaning, let it be supposed that the charter expressly authorizes the company to determine whether the members of it shall be permitted to vote by proxy or not. At the very first meeting of the company the question is proposed how shall members vote on this question, in person or by proxy? Certainly not by proxy, for that would be to admit proxies before there is any law to authorize their admission. This primary vote must then be given and determined by the majority of the corporation present and voting in person."

These principles are supported by a whole flood of authorities, which it would be superfluous to quote.

The vote, therefore, at the stockholders' meeting was properly taken "if no other mode was prescribed by the charter." The corporation is composed of two hundred and ninety-five individuals, all of whom were present by person or proxy, and the report of the directors was approved by a vote of forty-seven to twenty-six. And, in addition thereto, the majority of stockholders then present availed themselves of the right to vote cumulatively, thus bringing themselves under the provisions of the Constitution not only by their votes, but by their acts. If a majority of the members of the corporation present and voting in person can bind the corporation, they certainly did so on this occasion, both by their votes and acts.

The charter of the corporation appears to contain a provision for a stock vote in one instance only—that is, in elections for directors—and we think, therefore, it was properly refused at the annual meeting on the occasion on which it was called for.

We consider that the acceptance of the provisions of the present Constitution was properly ratified by the stockholders present at the annual meeting, and that the cumulative mode of voting provided for therein thus became as legal as the mode previously in force.

Entertaining these views, we find that George S. Pepper, James L. Claghorn, Pierce Archer, L. C. Cleeman, Henry Whelen, Jr., Alfred G. Baker, George A. Heyl, Francis P. Steel, Henry Budd, John Wright, Charles M. Swain, Peter A. Keller, who the tellers have reported to us received the majority votes cast, are duly elected directors of the Academy of Music for the ensuing year.

And a decree was entered accordingly. Whereupon complainants took this appeal assigning for error the decree of the court that Messrs Pepper, Claghorn, Archer, Cleeman and Whelen had been elected directors, and the action of the court in not entering a decree that Messrs Potts, Lennig, Biddle, Gratz and Gregg had been elected directors of the Academy of Music for the year ensuing after the annual election held on June 2d, 1884.

*Rufus E. Shapley* (with whom were *George Biddle* and *Wayne MacVeagh*), for appellants:—The action of the Board of Directors on May 20th, 1884, was illegal, *ultra vires*, and inoperative. The Act of Assembly incorporating the Academy of Music in section 5 expressly provides that in all elections of directors each stockholder shall have one vote for every share of stock which he may hold. The directors therefore could not divest the stockholders of their rights by changing the prescribed method of election in thus obtaining their consent at a meeting called for that purpose: Green's Brice's *Ultra Vires*, 392, note; Junction Railroad v. Pennsylvania Railroad, 2 W. N. C., 279; Commonwealth v. Jarrett, 7 S. &. R., 460; Shortz v. Unangst, 3 W. & S., 45; Commonwealth v. Cullen, 13 Pa. St., 133; Railway Co. v. Allerton, 18 Wallace, 233; Eidman v. Bowman, 58 Ill., 444; Vermont & Canada Railroad v. Vermont Central, 34 Vermont, 2; Lauman v. R. R. Co., 6 Casey, 42. The constitutional provision as to cumulative voting, which. the directors intended to accept, was intended to work a radical change in the manner of conducting elections: Hays v. Commonwealth, 1 Norris, 518, and could not therefore be adopted by the directors in the exercise of their general powers. In Pennsylvania Railroad v. Langdon, 11 Norris, 21, the question of the authority of the directors was not raised; and their acceptance of the Act of April 4th, 1868 (limiting amount to be recovered in actions against railroad companies for negligence) was acquiesced in by the

stockholders. Moreover the directors of the Pennsylvania Railroad are empowered by their charter to exercise "all the powers granted to the corporation:" Act of April 13th, 1846, (P. L., 312) § 6. The attempted ratification of the action of the directors by the holders of a minority of stock was void. Those only can ratify who might have given authority at first: Green's Brice's *Ultra Vires*, 546 note A. It was an attempt to divest the rights of the holders of a majority of .stock by imposing on them a radical change in the government of the corporation: Dartmouth College Case, 4 Wheat., 518; Hays *v.* Commonwealth, 1 Norris, 518; Elkins *v.* Railroad Company, 36 N. J. Eq., 467. Commonwealth *v.* Cullen, 1 Harris, 133, is silent as to whether the "majority of stockholders" there held to be necessary to the acceptance of alterations to the charter was a majority in *numbers* or a majority in *value.* In Taylor *v.* Griswold, 14 N. J., Law, 227, the charter provided that a majority of the individual corporators and their successors should elect. The title of the Act of May 22d, 1878, shows that it was intended to apply only to charitable organizations having no stockholders with vested rights. The Act of April 17th, 1876 (P. L., 33) was not repealed and this requires "a meeting of the stockholders called for the purpose." Moreover the Act of May 22d, 1878, applies only to corporations who desire to avail themselves of the benefit of some general or special law.

*John G. Johnson* (with whom was *Thomas Hart, Jr.*), for the appellees:—The word "aid" in the title of the Act of May 22d, 1878, does not mean pecuniary assistance, as the enacting clause shows that it means the benefit of general or special laws. It applies by its terms to "any" corporation, and was plainly intended to provide a mode by which all corporations wishing to put themselves in a position to receive future legislative action, could do so: Art. XVI of Constitution § 2, Buckalew, page 244. The Act of April 17th, 1876, P. L., 33, amendatory of the general corporation Act of April 29th, 1874, P. L., 84, simply provides a means whereby the benefit of the latter Act might be obtained, i. e. by accepting the new Constitution and that Act. The case in which a corporation does not desire to accept the Act of 1874 but simply to accept the new Constitution, is provided for solely by the Act of 1878. Even if a meeting of the stockholders had been called to consider this question, it would be determined by a vote of the stockholders as individuals, for the charter provides for a stock vote only in case of the election of directors, and without an express statute on the subject the stockholders vote as individuals: Morawetz on Private Corporations, § 360

Field on Corporations, § 226; St. Mary's Church, 7 S. & R., 517; Taylor v. Griswold, 14 N. J. Law, 227, 237; Lime Co. v. Green, L. R. 7, C. P., 43; Foss v. Harbottle, 2 Hare, 461. If this is not so, it would be necessary to obtain the consent of every stockholder, which of course is impracticable. Various cases have recognized other modes of acceptance of the new Constitution : Hays v. Commonwealth, 1 Norris, 518; Ahl v. Rhoads, 3 Norris, 319. In Hays v. Commonwealth, relied on by the other side, the charter of the Pittsburgh & Castle Shannon R. R., expressly provided for a stock vote " *at all general meetings* or elections by the stockholders:" In Elkin v. Railroad Company also cited by appellants, there was no action by the stockholders at all.

Mr. Justice STERRETT delivered the opinion of the court May 18th, 1885.

The Act of March 24th, 1852, incorporating the American Academy of Music, provides that after due notice given by the first five persons named in the letters patent, the subscribers to capital stock shall proceed to organize the corporation, and "then and there, in person or by proxy, choose by ballot or ticket in writing twelve suitable persons, members of the corporation, to be directors thereof for the year next ensuing, or until the next election." After providing for the election of president and other officers of the board, the fourth section of the Act authorizes the board of directors " to adopt such by-laws, rules and regulations, not inconsistent with the laws of the Commonwealth, as may be deemed expedient for the well being of the corporation," and then gives them, generally all the authority, powers and privileges necessary and proper for the management of the affairs thereof." The next section declares that "in all elections of directors, each stockholder shall have one vote for every share of stock which he may hold." In the absence of any qualifying clause in the charter, the last quoted provision clearly empowers the holders of the major part of the stock, represented at any such election, to elect a full board of directors, composed entirely of persons selected by themselves. As was said in Hayes v. Commonwealth, 1 Norris, 518, " This was part of the contract under which they entered into the company and paid their money. The compact was that they should have the power to select those who should have the management and control of the " corporate funds and property. For reasons given at length in that case, and which need not be now repeated, the authority thus conferred on the stockholders is a vested right, with which the Constitution of 1874 has not intended to interfere, except in the manner therein provided. But, on behalf of appellees,

it is contended that the provisions of the new constitution were duly accepted by the board of directors and thus became substantially a part of the charter; and, if there should be any doubt, as to the authority of the board to do what they did, their action in the premises was subsequently approved by a majority of the stockholders present at the last annual meeting in June, 1884. In view of the duties and powers of the directors, as specified in the charter, we have no hesitation in saying it was not within the scope of their authority to accept the provisions of the present constitution relating to the subject of cumulative voting. They had no power express or implied to surrender, as they undertook to do, the vested rights of their constituents. Their action was not only without authority, but it was manifestly designed to deprive the majority in interest, of the stockholders, of a right guaranteed to them by their charter. Directors clothed, as they were, merely with the ordinary powers of executive management are powerless to effect a radical change in the chartered rights of stockholders, contrary to the wishes and against the objection of a majority in interest. But, aside from all this, the Act of 1878, under which it is claimed the board of directors acted, was never intended to apply to such corporations as the Academy of Music. In very terms it is restricted to private corporations applying to the state for aid, and hence it embraces only charitable corporations which have no stockholders with vested property rights. The Act of 1876 had previously prescribed a mode of proceeding by which corporations for profit and having capital stock may adopt the system of cumulative voting. The acceptance required to be filed in the office of the Secretary of the Commonwealth, must not only be under the corporate seal, but it must also appear that the Act was duly authorized by a meeting of the stockholders called for that purpose. It is only by complying with this provision of the Act of 1876 that a regular and valid acceptance, of the cumulative system of voting, by the Academy of Music can be accomplished. If at a meeting duly called for that purpose, a majority, not in number but in interest of the stockholders present thereat in person or by proxy, authorizes such acceptance, then and not till then can the holders of the major part of the capital stock be stripped of their vested right to elect a full board of directors all of their own selection. A stock vote on the question of acceptance may undoubtedly be waived, but if demanded by stockholders they are entitled to it.

The attempted acceptance by the board of directors was irregular and unauthorized, and the so called approval by vote of a majority, in number but not in interest, of the stockhold-

[Wolfe v. Arrott.]

ers present at the last annual meeting was wholly ineffectual for the purpose of engrafting upon the charter of the Academy the provisions of the present constitution. It follows therefore that cumulative voting for directors at the last annual meeting was unauthorized, and so far as such votes affected the result of the election they should have been disregarded. The assignments of error are sustained.

> Decree reversed, at the costs of appellees, and it is now adjudged and decreed that Charles W. Potts, Charles Lennig, George W. Biddle, Simon Gratz, Joshua Z. Gregg, Alfred G. Baker, George A. Heyl, Francis P. Steel, Henry Budd, John Wright, Charles W. Swain, Peter A. Keller, were duly elected and are the directors of the American Academy of Music for the year ensuing after the annual election of 1884.