SYDNEY D. MADDOCK and EDWARD S. MADDOCK,

*vs.*

VORCLONE CORPORATION, a corporation of the State of Delaware.

*New Castle, Sept.* 25, 1929.

*James I. Boyce,* for complainants.

*Charles C. Keedy,* for defendant.

THE CHANCELLOR. In *Davis v. Louisville Gas & Electric Co.,* 16 *Del. Ch.* 157, 142 *A.* 654, it was said that a corporation created under the *General Corporation Act* (as this was) possesses all the powers conferred upon it, not only by its certificate of incorporation, but as well those which the act itself confers upon corporations created under it. The following Delaware cases were cited in support of that proposition: *Peters v. U. S. Mortgage Co.,* 13 *Del. Ch.* 11, 114 *A.* 598; *Morris, et al., v. American Public Utilities Co.,* 14 *Del. Ch.* 136, 122 *A.* 696; *Bouree, et al., v. Trust Francais, Inc.,* 14 *Del. Ch.* 332, 127 *A.* 56.

*The General Corporation Act* in *Section* 26 confers a broad power of amendment. This corporation therefore without any express reservation of a power to amend has all the power in that behalf which *Section* 26 confers. But to make assurance doubly sure the incorporators of the defendant expressly reserved in the eleventh article of the certificate of incorporation, the right to amend, alter, change or repeal any provisions contained in the certificate of incorporation in the manner then or thereafter prescribed by statute, and specifically provided that all rights conferred upon stockholders should be subject to that reservation.

The right to amend in accordance with the statute was therefore not only conferred by the statute itself, but expressly reserved in the charter.

The only question then which the pending bill presents is whether or not the proposed amendment is one which lies outside the scope of *Section* 26 of the *Act* (*Revised Code* 1915, § 1940, as amended in 1929). That section is, as follows:

"1940. *Section* 26. CERTIFICATE OF INCORPORATION; HOW AMENDED; WHEN CORPORATION HAS CAPITAL STOCK; WHEN CORPORATION HAS NO CAPITAL STOCK.—Any corporation of this State existing prior to the tenth day of March, 1899, whether created by special act, or general law, or any corporation created under the provisions of this chapter, may, from time to time, when and as desired, amend its certificate of incorporation by addition to its corporate powers and purposes, or diminution thereof, or both; or by substitution of other powers and purposes, in whole or in part, for those prescribed by its certificate of incorporation; or by increasing or decreasing its authorized capital stock or reclassifying the same, by changing the number, par value, designations, preferences, or relative, participating, optional, or other special rights of the shares, or the qualifications, limitations or restrictions of such rights, or by changing shares with par value into shares without par value or shares without par value into shares with par value either with or without increasing or decreasing the number of shares; or by changing its corporate title; or by making any other change or alteration in its certificate of incorporation that may be desired, and any or all such changes or alterations may be effected by one certificate of amendment: Provided that every certificate of incorporation as so amended, changed or altered, shall contain only such provisions as it would be lawful and proper to insert in an original certificate of incorporation made at the time of making such amendment. Whenever issued shares having par value are changed into the same or a greater or less number of shares without par value, whether of the same

or of a different class or classes of stock, the aggregate amount of the capital of the corporation represented by such shares without par value shall be the same as the aggregate amount of capital represented by the shares so changed; and whenever issued shares without par value * * * to a greater or lesser number, whether of the same or of a different class or classes, the amount of capital represented by the new shares in the aggregate shall be the same as the aggregate amount of capital represented by the shares so changed. The certificate of amendment of the certificate of incorporation of the corporation effecting any such change shall set forth that the capital of the corporation will not be reduced under or by reason of said amendment. * * * "

That the right of stock to vote cumulatively at an election for directors is a special right of a share within the meaning of the section would seem to be self evident. It is therefore a right which under *Section* 26 is particularly mentioned therein as susceptible of change.

The complainants contend, however, that even if the power be conceded to be embraced within the literal language of the section, yet the nature of the right to vote cumulatively is such that to permit it to be taken away as is proposed in this case would be so in violation of fairness and equity as to suggest that the literal import of the section's language should be held not to prevail; and the power to amend by depriving stock of its cumulative voting power should therefore be excepted by a court of equity from the operation of the section.

In this case, there are 50,000 shares of voting common stock now outstanding. The complainants together own 9,970 of these shares. The board of directors consists of five persons. If the right to vote cumulatively is preserved, it is apparent that the complainants, though in a minority, may cast five times 9,970, or 49,850, votes for one director, thus securing representation on the board. If the power exists to take away this right by an amendment under *Section* 26, the vote on an amendment to that effect would be determined by a majority of ballots cast on the basis of one vote for each share. Thus, it would be in the power of 25,001 shares to deprive the complainants' minority of 9,970 shares of their present right to elect a director.

Indeed it is said, and the facts appear to justify the assertion, that the proposed amendment was gotten up for the express purpose of defeating the declared purpose of the complainants

to vote their stock cumulatively in order to secure a representative on the board. Those who control the majority at the present time do not disguise the fact that they desire to prevent the complainants from electing a minority member of the board. Their reason for this attitude, they say, is that a suit is pending against the complainants to secure a cancellation of their stock as having been illegally issued, and it would be highly undesirable that the complainants should have power to put a representative of theirs on the board of the defendant who could by reason of his position be of help to them in the litigation referred to.

If this matter were left to turn solely on the question of abstract right and fairness, I rather incline to think that in the face of that situation the defendant would have the better of the argument. But the case is not to be decided on that sort of question. There is nothing shown that can indicate a fraud, and accordingly the question is one purely of the statute's application.

It is said that the right to vote cumulatively is a right given for the enjoyment and protection of the minority even against the wish of the majority, and that it would be beyond all reason to say that the statute means to put it in the power of that majority by its own vote to recapture for itself that portion of its general power which had been carved out for the special enjoyment and protection of a minority. Certainly, say the complainants, it is unfair to permit a bare majority to frustrate the minority's power to elect a director against the majority's will by destroying the right altogether. The unfairness is so glaring, argue the complainants, that, even though the literal language of the statute permits it, yet a court of equity ought to assume that the statute was never meant to be taken in such literal sense.

This argument requires that the court should write some sort of qualifying language into the statute—some sort of a proviso that if the statute's power were exercised it should only be on condition that the majority in favor of it should be sufficiently large to make sure that no non-assenting minority was left in sufficient number ever to be able to elect a director. By what warrant a court would be justified in taking such liberties with a statutory provision, I am totally unable to see. The

statute as well as being a statute, is a term of the contract by which stockholders hold their stock. The majority have rights thereunder as well as the minority. Such a judge-made proviso as just suggested would work a deprivation to the majority of their rights, and would thus, in addition to being judicial legislation, be tantamount to an interference with private rights.

It appears to me, however, to be confusing to treat this matter as one that deals with majorities and minorities and their respective rights. While the right of cumulative voting has for its purpose the affording to a minority of the voting stock an opportunity to elect one or more directors, the scheme does not pretend to assure to a minority a representation in any event. The enjoyment of the right is a thing incident to each share of stock. It belongs to no group as such. If its exercise results in the election of a director, it is only because enough individual shares have banded together to achieve that result. The end obtained is in consequence of the individual voting power of shares of stock no matter by whom owned. It is not a result which particular individuals in the corporation are entitled to achieve in the sense that one group of particular stockholders are entitled under the corporate compact to have a director representative on the board and another group to have so many other representatives. The right is purely incident to stock and not to individuals. "Majority" and "minority" when translated into terms of individuals have no constant meaning. Many who are numbered among the majority today may find themselves among the minority tomorrow. The right, while it exists, of a single share to vote as many as one times the number of directors to be elected continues unchanged, while the compositions of majorities and minorities affected by its exercise may from time to time be in a state of constant flux.

When, therefore, a majority of the shares outstanding vote to take away the right of one share to vote with cumulative strength, those who compose that majority take from themselves as well as from those who compose the then minority a right which is common to all. The deprivation of the right is not partial in its operation. It is visited on all alike.

Now it may be unwise as a matter of policy to allow those

in the temporary majority to destroy this right which is common to all. Upon that it is not my province to pass. The fact is that as the Legislature has left it in the option of incorporators to adopt the policy of cumulative voting, so it has left it in the option of the stockholders to abandon it. Stockholders who acquired their stock, took it with this understanding. It is a term in their contract, which specifically provides that special rights may be resigned by the appropriate vote of the majority of those enjoying them.

Undoubtedly it is true as contended by the solicitor for the complainants that a right to vote stock cumulatively is such a right as will be protected from interference. It was so held in *Tomlin, et al., v. Farmers' & Mechanics' Bank*, 52 *Mo. App.* 430, and *Wright v. Central Cal., etc.*, 67 *Cal.* 532, 8 *P.* 70, cited by the complainants. In these cases, the right was conferred by constitutional provision, and it was held that the majority had no power either by resolution or by-law to take away the right. There can be no question as to the correctness of the ruling in those cases. Of course a constitutional right is exempt from interference by authority of a lesser grade.

This case involves no question of that sort, for here the proposition is whether or not a right conferred by statute may be taken away by the authority of and in the manner provided by the very statute which creates it, where the condition on which the right is granted is that it may be so taken away. Where that is the case, it would appear to be plain that the question of authority is beyond dispute.

The right of the majority to elect directors by the system of straight voting is just as much of a right while it continues as is the right to elect by cumulative voting. Yet the system of straight voting may be changed to a system of cumulative voting provided the method of effecting the change which the law specifies is followed. *Baker's Appeal*, 109 *Pa.* 461. In the Pennsylvania case the matter was treated as one dealing with the terms of the contract by which the stockholders held their stock. So likewise should the matter be considered here. As in the Pennsylvania case the right to vote by straight ballots was subject to be supplanted by a right to vote cumulatively where

the constitutional and statutory provisions, which were a part of the contract between stockholders, authorized it, so for the same reasons the converse holds true, viz. that the right to vote cumulatively may be supplanted by a scheme of simple straight voting if the statute which is written into the contract authorizes it and its directions are followed.

The preliminary injunction will be denied and the rule discharged. Let an order be entered accordingly.