Bell, J.
It can not be disclaimed that by reason of the stock distribution of this particular corporation a classification of the three directors into three classes containing one director each effectively divests the minority shareholders of a measure of control they formerly exercised over the corporation by electing one member of the board through the expedient of cumulative voting.
The issue herein, however, is not whether a particular result was accomplished but whether, under the statutes, such a result can legally be accomplished.
Section 1701.64, Revised Code, provides, in part, as follows:
“The articles or the code of regulations may provide for the term of office of all of the directors or, if classified upon the basis of the expiration of the terms of office of the directors, of each class thereof, provided that no term shall be fixed for a period of more than three years from the date of their election and until the election of their successors. ’ ’
Section 1701.58, Revised Code, after providing that any shareholder may, upon giving 24 hours notice of his desire to do so, cumulate such voting power as he possesses and give one candidate as many votes as the number of directors multiplied by the number of his votes equals, then provides that ‘ ‘ such right to vote cumulatively shall not be restricted or qualified by the articles or the code of regulations. ’ ’
The Court of Appeals sustained the contention of appellees and held that, since Section 1701.58, Revised Code, was specific in character, it constituted a limitation upon the applicability of Section 1701.64, Revised Code, and that, since the classification by appellants, attempted under the authority of Section 1701.64, Revised Code, did restrict the right to vote cumulatively as specifically guaranteed by Section 1701.58, Revised Code, such classification was invalid.
It is a well settled rule of statutory construction that where a statute couched in general terms conflicts with a specific statute on the same subject, the latter must control. Gibson v. *49 Summers Construction Co., 163 Ohio St., 220, 126 N. E. (2d), 326; Andrianos v. Community Traction Co., 155 Ohio St., 47, 97 N. E. (2d), 549; Acme Engineering Co. v. Jones, Admr., 150 Ohio St., 423, 83 N. E. (2d), 202. The rule, however, often is much easier stated than applied, and especially is this true in the instant case.
The primary duty of a court in construing a statute is to give effect to the intention of the Legislature enacting it. In determining that intention, a court should consider the language used and the apparent purpose to be accomplished, and then such a construction should be adopted which permits the statute and its various parts to be construed as a whole and gives effect to the paramount object to be attained. Cochrel, a Minor, v. Robinson, 113 Ohio St., 526, 149 N. E., 871.
In enacting Section 1701.58, Revised Code, did the General Assembly intend, as urged by appellants, to guarantee only that the rigkTAo vote cumulatively shaRjutbe resjmicled or qualified? Or did it intend to^uarantée^tEaTTÉeeffectiveness of cumulative vofiñg^o^^nsureTMifior representation on the board of directors shall not be restricted or qualified?
In 1897, immediately prior to the enactment of the first statute expressly providing for cumulative voting of shares of stock in the election of directors, Section 3245, Revised Statutes, provided that directors “shall be chosen, by ballot, by the stockholders * * *; each share shall entitle the owner to as many votes as there are directors to be elected, and a plurality of votes shall be necessary for a choice.” This court held in State, ex rel Baumgardner, v. Stockley, 45 Ohio St., 304, 13 N. E., 279, that this statute did not confer upon shareholders the right of cumulative voting at the election of directors held thereunder.
Section 3245a, Revised Statutes, provided: “A corporation may provide in its articles of incorporation that each stockholder, irrespective of the amount of stock he may own, shall be entitled to one vote, and no more, at any election of directors, or upon any subject submitted at a stockholders’ meeting, and when such provision is made it shall be governed thereby.” 2 Bates Annotated Statutes (4 Ed.), 1843.
It is interesting to note that, as early as 1893, the organ *50 ized bar of Ohio began to interest itself in the rights of minority shareholders. In an address before the annual meeting of the Ohio State Bar Association held at Put-in-Bay in July 1893, John H. Doyle, then president of the association, said:
“* * * While there is a unanimity of purpose and an accord of thought amoungst the shareholders, the corporation moves smoothly, and its directors represent and carry out the wishes of such shareholders.
“But that is not always the case, and under the present law, as it has been interpreted by the Supreme Court, a bare majority can absolutely exclude the minority from all voice in its management. To illustrate:
“In a corporation represented by 100 shares of capital stock, the owners'of 51 shares could manage the corporation without the voice of the remaining 49 shares being heard, and the one odd share would be the available power; the 51 shares might be made very valuable, while the 49 could be rendered valueless, and the odd share or the balance of power receive an immense value. These suggestions will show that any statute providing for minority representation in corporations would not lead to ‘ absurd or improbable results, ’ but would be marked with wisdom and a fair regard for the rights of the parties.
‘ ‘ The old story, so often told, of a prominent Eastern newspaperman’s reply to the question of what the shares in his company were worth, is very apt:
“ ‘There are 51 shares,’ said he, ‘that are worth $250,000. There are 49 shares that are not worth a--.’
“I think the law should be so amended as to allow the 49 shares to elect two out of the five directors or three out of seven, as the case may be.
“In other words, that the shareholders be allowed to cumulate their votes on one or more directors, as they see fit, so that all interests may be fairly represented, without destroying the right of the majority to control.
“It would result in increased confidence in the management of such concerns, prevent the freezing-out process so often resorted to, and very often prevent fraud and corruption in the management of private corporations.”
At the annual meeting of the bar association on July 20, *51 1897, the Committee on Judicial Administration and Legal Reform submitted the following as a part of its report to the association:
“The annual address of Judge Doyle to this association in 1893 recommended the amendment of the law respecting the management of private corporations so as to secure a representation in that management to minority stockholders, in proportion to the amount of stock held by them. In an address delivered to the association in 1895 by Mr. Bateman [Warner M. Bateman, of the Cincinnati Bar], the deficiency of our laws in provision for the security of creditors was discussed and the reformation of them, in that respect, recommended. With a view to carry out the suggestions made, Mr. Bateman submitted to the committee amendments and additions to the statute.
“Your committee is of the opinion that our laws need amendment in both respects. The minority of stockholders are entitled to such opportunity of knowledge of its business and the conduct thereof as would enable them to form judgment concerning the same, and are entitled also to have such judgment and their advice expressed in the body charged with the duty of such management. This privilege, secured by law, would be effective in preventing oppressive abuse of power by the majority of stockholders, exercised for illegitimate, selfish, and fraudulent ends. We are of the opinion that the law should be so modified as to secure these rights to a minority stockholder.
Í*# * *
“We recommend the adoption of the amendment proposed to Section 3245, as to the election of directors of a corporation.”
The suggested amendment, so far as pertinent to the subject under discussion, read as follows:
“At the time and place appointed directors shall be chosen by ballot by the stockholders * # *. And in all elections for directors for a corporation each stockholder shall be entitled to one vote for each office to be filled, for each share of stock he may hold and to an aggregate number of votes to be ascertained by multiplying the number of such shares of stock by the number of directors to be chosen, and he may, at his option, cast all of such aggregate votes for one candidate, or may dis *52 tribute them among a number of candidates not exceeding tbe number of directors to be chosen. The entire number of directors to be elected shall be balloted for at one time and not separately.”
The General Assembly, on April 23, 1898 (93 Ohio Laws, 230), amended Section 3245, Revised Statutes, to read:
“At the time and place appointed, directors shall be chosen, by ballot, by the stockholders * * *; at such election and at all other elections of directors, every stockholder shall have the right to vote in person or by proxy the number of shares owned by him for as many persons as there are directors to be elected, or to cumulate said shares and give one candidate as many votes as the number of directors multiplied by the number of his shares of stock shall equal, or to distribute them on the same principle among as many candidates as he shall think fit; and such directors shall not be elected in any other manner. * * * ”
However, Section 3245a, Revised Statutes, quoted above, remained unchanged, and corporations were authorized to provide in their articles of incorporation that each shareholder could have only one vote and no more, regardless of the number of shares, at the election of directors. (Whether such a limitation can still be imposed under Section 1701.06 is immaterial in the present case.)
In upholding the validity of cumulative voting authorized by the amendment to Section 3245, Revised Statutes, this court said: “We can not suppose that the General Assembly amended the statute to the end that it should remain unchanged.” Schwarts v. State, ex rel. Schwarts, 61 Ohio St., 497, 56 N. E., 201.
If we may assume that the General Assembly was motivated by the recommendation of the bar association, it is obvious that it intended to assure minority representation on a corporate board of directors by permitting cumulative voting.
The provision for classification of directors appears for the first time in Ohio as Section 8623-55, General Code, enacted as part of the General Corporation Act, effective June 9, 1927 (112 Ohio Laws, 32). At the same time, and as part of the same act, the General Assembly repealed Section 8636, General Code (the successor statute to Section 3245, Revised Statutes), *53 and enacted Section 8623-50, General Code (112 Ohio Laws, 30), without change, which was subsequently enacted as Section 8623-50«, General Code (123 Ohio Laws, 291), and at the time of the institution of this cause was Section 1701.58, Revised Code. In enacting Section 8623-50 in 1927, the General Assembly added provisions for notice of desire to cumulate voting power and that such right shall not be restricted or qualified by the articles or the code of regulations.
It is argued by Humphrys, with a great deal of persuasion, that, since the provision preventing the restriction or qualification of cumulative voting was first inserted into the statute at the same time that corporations were given the authority to classify directors, it was the legislative intent to prevent the destruction of effective cumulative voting by a classification of directors. But, assuming that such was the legislative intent, did the General Assembly, by the language employed, accomplish the result sought?
Courts have on many occasions been called upon to discuss cumulative voting, its purposes and results. In State, ex rel. Price, Atty. Genl., v. DuBrul, 100 Ohio St., 272, 126 N. E., 87, Judge Jones said:
“It is conceded that this privilege of cumulation is accorded for the sole purpose of protecting the minority stockholders, and so important has this policy become that several states have incorporated this right into their organic law. If this statute is followed and the privilege therein given is exercised in good faith by shareholders of a corporation, neither the majority nor the minority stockholders have any right to complain, for, while the majority may still control the corporate management, the minority, if it has sufficient strength, can obtain representation on the board. The stronger the strength of the minority the larger will be the representation which it will be able to obtain by this method of cumulative voting; but, in no instance, if the majority follow the same tactics as the minority and cumulate its strength, can such minority acquire the majority of the board of directors. On the other hand, by obtaining a minority representation upon its board of directors, the minority can thereby obtain direct contact with the business of *54 the corporation, and its management, and observe the conduct of the corporate officers whom the directors may employ.”
In Maddoch v. Vorclone Corp., 17 Del. Ch., 39, 147 A., 255, the court, in discussing cumulative voting, said:
“While the right of cumulative voting has for its purpose the affording to a minority of the voting stock an opportunity to elect one or more directors, the scheme does not pretend to assure to a minority a representation in any event. The enjoyment of the right is a thing incident to each share of stock. It belongs to no group as such. If its exercise results in the election of a director, it is only because enough individual shares have banded together to achieve that result. The end obtained is in consequence of the individual voting power of shares of stock no matter by whom owned. It is not a result which particular individuals in the corporation are entitled to achieve in the sense that one group of stockholders are entitled under the corporate compact to have a director representative on the board and another group to have so many other representatives. ’ ’ See, also, 56 Dickinson Law Review, 330; -5 Fletcher, Cyclopedia of Corporations, 197, Section 2048.
Strangely enough, however, prior to 1955, there were only two cases which discussed the effect of classification of directors on cumulative voting. In Pittsburgh Steel Co. v. Walker (Court of Common Pleas, Allegheny County, Pennsylvania, 1944), three judges said there was doubt as to the constitutionality of the staggered system, but did not pass directly on the question. In Heeps v. Byers Co. (Court of Common Pleas, Allegheny County, Pennsylvania, 1950), one judge denied a preliminary injunction against the holding of a staggered-voting election on constitutional and other grounds. The Supreme Court of Pennsylvania, in affirming the judgment of the lower court, merely denied any right to question the granting of preliminary injunctions. 363 Pa., 618, 70 A. (2d), 837. See The Wolfson Case: Cumulative Voting and Staggered Elections, 50 Northwestern Law Review, 112, note 7.
But on February 1,1955, the Circuit Court of Cook County, Illinois, decided the case of Wolfson v. Avery. The action grew out of the much-publicized battle between Sewell Avery and Louis E, Wolfson for control of the board of directors of Mont *55 gomery Ward & Company. The Wolfson group sought a declaratory judgment that a bylaw of Montgomery Ward providing for the annual election of only one-third of the nine members of the board of directors is in violation of Section 3, Article XI of the Illinois Constitution, which, among other things, provides for cumulative voting. Since the bylaw is specifically authorized by Section 35 of the Illinois Business Corporation Act (Illinois Revised Statutes, 1953, Chapter 32, paragraph 157.35), the complaint also sought to have that portion of the statute declared unconstitutional. The Circuit Court granted the plaintiff’s motion for judgment on the pleadings, declaring Section 35 of the Business Corporation Act unconstitutional.
The trial judge ]xT'í5B~Wi<)lfson case adopted the theory that the Constitution requires/that a minority shareholder be given the right — by WraxriuTfíve voting — to exercise his “maximum voting strength proportionate to his share holding.” He rejected the argument that the constitutional provision merely gives minority shareholders an opportunity to have some representation on the board of directors, whether proportionate or not. 23 Law Week, 2393.
The Supreme Court of Illinois, after reviewing at some length the proceedings of the constitutional convention and the publications which interpreted the constitutional provision which was ratified on July 2, 1870, concluded that “Section 35 of the Business Corporation Act, in authorizing the classification of directors, is inconsistent with the constitutional right of a stockholder to cumulate his shares through multiplying them by the ‘number of directors,’ and cannot be sustained.”
The Illinois court, in disposing of the defendant’s reliance upon the fact that a law authorizing classification was passed by the first Illinois Legislature, and that this Legislature included 13 members who had served on the Constitutional Convention, said that “that is a fact to be given some weight, but it is by no means controlling (cf. Marbury v. Madison, 1 Cranch, 137, 2 L. Ed., 60) and in this case it must yield to the evidence supplied by the constitutional debates and the contemporary accounts in the press.”
The only other reported case discussing the conflict between classification and cumulative voting is the report of the *56 decision of the Court of Appeals in the present case. See 57 Ohio Op., 44, 125 N. E. (2d), 204. As distinguished from a conflict between a constitutional provision and a statutory provision as in the Wolf son case, we have here a conflict between two statutory provisions.
Robert T. Shafer, Jr., in 24 Cincinnati Law Review, 560, 567, said:
“Fundamentally, then, when a Hegelian dialectic problem arises from the coexistence of a constitutional provision guaranteeing cumulative voting rights and a statute permitting the use of staggered voting, the court may reach a synthesis merely by asking itself: ‘Do we choose to enforce the constitutional mandate or not?’ Concurrence must inevitably fall in favor of the superiority of the constitutional provision.
“The problem becomes more difficult when the protagonist and antagonist take the forms of a statutorily provided cumulative voting guaranty and a statutorily provided permission for the application of staggered voting.”
In concluding his discussion of the Court of Appeals decision in the present case, Shafer said:
“By using this phrase ‘restricts or modifies’ the court left in doubt in Ohio the issue of exactly how effective the classification provision continued to be. This appears to be an area in Ohio law wherein the courts might find a consistency of the two provisions and will refuse to declare either provision ineffective. ’ ’
It must be assumed that the General Assembly in enacting two statutes — one authorizing the classification of directors and one guaranteeing cumulative voting — intended to give effect to both.
In Pancoast v. Ruffin, 1 Ohio, 385, 386, this court said:
“Statutes should be so construed as to give effect to the intention of the Legislature, and, if possible, render every section and clause effectually operative.”
Judge Newman, in In re Hesse, 93 Ohio St., 230, 234, 112 N. E., 511, said:
“It is settled that where there are contradictory provisions in statutes and both are susceptible of a reasonable construction which will not nullify either, it is the duty of the court to *57 give such construction, and further, that where two affirmative statutes exist one is not to be construed to repeal the other by implication unless they can be reconciled by no mode of interpretation.”
That cumulative voting is generally accepted is evidenced by the facts that mandatory cumulative voting provisions are found in the Constitutions of 13 states and in the statutes of eight others, and that permissive cumulative voting is authorized in 18 states. Cumulative voting is provided for in Section 31 of the Model Business Corporation Act, drawn by the American Bar Association, and in Section 28 of the Model Business Corporation Act, proposed by the Commissioners on Uniform State Laws. Despite the seemingly obvious conflict between classification of directors and cumulative voting, provisions for staggered elections are made in approximately 33 states. See Williams, Cumulative Voting for Directors (1951), 7; Cumulative Voting and Classification of Directors, St. John’s Law Review, 83, 86.
The problem will never arise in three jurisdictions because annual election of all directors is required by statute. See Section 22, Title 10, Alabama Code; Sections 805, 2201, California Corporation Code; Section 44-109, Wyoming Compiled Statutes.
Obviously, a provision in the articles or code of regulations to the effect that a shareholder may not vote cumulatively would restrict the right given by statute and would therefore be invalid in Ohio. Similarly a provision that a shareholder could vote cumulatively only if he held a certain percentage of the corporate stock would be invalid. But the same result might easily be accomplished without running afoul of the prohibition of Section 1701.58, Revised Code.
And majority shareholders have in many instances succeeded in curtailing or eliminating cumulative voting through a number of devices. In states where the right to vote cumulatively is permissive rather than mandatory, the charters of certain corporations have been amended to replace cumulative voting with straight voting. Maddock v. Vorclone Corp., supra. Cumulative voting may also be circumvented by removing minority-elected directors without cause. See Bowes and De *58 Bow, Cumulative Voting at Elections of Directors of Corporations, 21 Minnesota Law Eeview, 351, 366, 367. A third method employed to prevent effective use of cumulative voting is that of reducing the number of directors. Bond v. Atlantic Terra Cotta Co., 137 App. Div., 671. See, also, Curran, Minority Stockholders and the Amendment of Corporate Charters, 32 Michigan Law Eeview, 743, 764, 765.
For example, suppose in a corporation having a board of nine members a minority shareholder, by cumulating his voting power, is able to elect one member of the board. But suppose, also, at the next meeting, the code of regulations is amended to reduce the directorate from nine to seven, as permitted under Section 1701.68, Eevised Code. The minority shareholder, although not deprived of his right to vote cumulatively, has been deprived of representation on the board just as effectively as if he had not had the right. Similar examples could be given, depending on the number of shares held by the minority and the number of directors to be elected. Can it be said that the legislative intent in enacting Section 1701.58, Eevised Code, was to limit Section 1701.64, Eevised Code, and not limit Section 1701.68, Eevised Code, and other sections of the corporation act? We do not think so.
If effect is to be given to both enactments of the General Assembly, the guaranty provided in Section 1701.58, Eevised Code, must be construed as one granting a right that may- not be restricted or qualified rather than one ensuring minority representation on the board of directors.
To hold otherwise would require a complete annihilation of the provision for classification because any classification would necessarily be a restriction or qualification on the effectiveness of cumulative voting, and no corporation could ever avail itself of the privilege of classification. We do not believe the General Assembly intended any such result.
Both the Ohio State Bar Association and the General Assembly recognized that, under the law of Ohio as it existed in January 1954, the action taken here by the corporation could have been accomplished. Consequently, the bar association recommended a change in the corporation law of Ohio to the effect that any class of directors could contain not less than two *59 directors. In commenting on the proposed change, the Corporation Law Committee of the association said: “A new provision is that the number of directors in a given class shall be not less than two. This is for the purpose of meeting the objection that has been raised to the effect that under the present law the majority shareholders may fix the number of directors at three, each director to be in a separate class so that at each annual meeting only one director is to be elected. This device would prevent the minority, even though holding 49 per cent of the shares, from electing a single director.”
Subsequently, Section 1701.57, Revised Code, was enacted, supplanting former Section 1701.64, Revised Code, to require that each class of directors must consist of not less than three directors each. (126 Ohio Laws, H70, effective October 11, 1955.) Thus did the General Assembly obviate the possibility of a recurrence of the action taken by The Winous Company.
It can not be gainsaid that the action taken here effectively eliminated the minority shareholders from exercising any control over the ^corporation. But we are of the opinion that the throwing^©! an aura of uncertainty and confusion around the statutory provision for classification of directors is not required by the construction of the statutory provision for cumulative voting. We hold, therefore, that Section 1701.58, Revised Code, guarantees to minority shareholders only the right of cumulative voting and does not necessarily guarantee the effectiveness of the exercise of that right to elect minority representation on the board of directors.
The Court of Common Pleas, although holding the classification of directors to be valid, found that the notice of the annual meeting sent to the shareholders was not sufficient to give notice of the intention to amend the code of regulations.
Article VIII of the regulations provides: “This code of regulations may be amended or repealed at any annual meeting of the stockholders or at a special meeting called for that purpose, by a vote of the holders of at least a majority of the capital stock.”
The notice of the annual meeting of The Winous Company read as follows:
“Notice is hereby given that the annual meeting of the *60 shareholders of The Winous Company will be held on Monday, January 18,1954, at 10 o’clock a. m., at the office of the company 1258 Euclid Avenue, Cleveland, Ohio, for the purpose of the election of directors of the company, and for the transaction ot such other business as may come before the meeting.” (Emphasis added.)
The Court of Appeals in its opinion stated:
“It is clear from the foregoing facts that by the code of regulations the stockholders were empowered to amend the code of regulations at any annual meeting and that it was unnecessary to state such purpose in the notice of the meeting. The action of the trial court in holding the resolution for classification of directors and the appointment of the newly elected directors into the various classifications for naught, because of the failure to give notice of such proposal in the notice calling the meeting, although erroneous, when placed upon that ground, has not been presented to this court by cross-appeal and therefore we will not pass on the question. ’ ’
We agree with the Court of Appeals as to the sufficiency of notice, and the judgment of the Court of Common Pleas should be modified accordingly.
The judgment of the Court of Appeals is reversed and the judgment of the Court of Common Pleas is modified and, as modified, is affirmed.

Judgment reversed.

Matthias, Stewart and Taft, JJ., concur.
Weygandt, C. J., and Hart, J., dissent.